**D. Hone THROCKMORTON, Plaintiff-Respondent,**

v.

**M. F. A. CENTRAL COOPERATIVE, a Corporation, Defendant-Appellant.**

No. 33752.

St. Louis Court of Appeals, Missouri.

Dec. 22, 1970.

Zenge & Smith, Canton, for defendant-appellant.

Bollow, Crist & Bollow, Shelbina, J. Patrick Wheeler, Canton, for plaintiff-respondent.

DOERNER, Commissioner.

Plaintiff sought actual and punitive damages for fraudulent misrepresentations he claimed defendant made to him regarding the quality of hog feed plaintiff purchased from defendant. The jury returned a verdict for actual damages of $3,000 and punitive damages of $1,000. Defendant filed a motion for judgment notwithstanding the verdict, or in the alternative for a new trial, or a remittitur. The trial court overruled the motion for judgment, and overruled defendant's alternative motion for a new trial on condition that plaintiff remit the sum of $495 actual damages within ten days, otherwise said motion would be sustained. Plaintiff filed the remittitur within the time specified, and from the judgment so modified defendant appealed.

Defendant asserts that the court erred: (1) in submitting the case to the jury; (2) in giving Instruction No. 3 at plaintiff's request; and (3) in giving Instruction No. 6 at plaintiff's request. Defendant's initial assignment presents a narrow issue. Premising its argument on the rule that to successfully maintain an action for fraud and deceit a plaintiff must establish all of the essential elements enumerated in John T. Brown, Inc. v. Weber Implement & Auto Co., Mo., 260 S.W.2d 751, 755, defendant faults plaintiff as to his right to rely on the truth of defendant's representation. This for the reason, defendant contends, that the plaintiff's own testimony showed that he knew for several months that the feed sold to him by defendant was bad, and as an experienced hog feeder plaintiff could not reasonably rely on defendant's representations that the feed was good. Defendant does not contend that there was any lack of proof as to

the other essential elements: the representations made; their falsity; defendant's intent that they be acted on by plaintiff, in the manner contemplated; and plaintiff's consequent and proximate injury. John T. Brown, Inc. supra. Accordingly, we confine our review to the plaintiff's evidence relevant to defendant's contention.

Plaintiff, a farmer who had fed hogs for 27 years prior to the trial in 1969, had purchased hog feed from the defendant from 1959 to 1967, had a good relationship with defendant, and was personally acquainted with Sammy Day, the manager of defendant's elevator at LaBelle, Missouri, and with the other people who worked there. In 1966 plaintiff entered into an oral contract with defendant, through Day, to purchase in 1967 a certain number of bushels of number 2 yellow corn with moisture content not to exceed 13½ percent, which corn was to be ground by defendant, a protein supplement added, and delivered by defendant to plaintiff as hog feed. Delivery of the feed began, apparently in March 1967. Plaintiff noticed nothing wrong with the feed until, after a warm spell later in March, he found that the feed would not feed down in the hog feeders, that 3,000 pounds of feed would not fill a 3,000 pound feeder because of moisture in the feed, and that the feed caked in the feeder to the extent that plaintiff had to beat on the feeders to get the feed to descend. About the last part of April plaintiff told Day that he was not happy with the feed and asked the latter if there was anything wrong with it. According to the plaintiff, Day assured him that there was nothing wrong with the feed and that the difficulties plaintiff was experiencing were due to the weather. Plaintiff was aware that the weather had been wet and took Day's word that there was nothing wrong with the feed.

Plaintiff continued to purchase feed from defendant about every week or ten days. Other complaints of the same nature were made by plaintiff to Day, who continued to blame the weather for plaintiff's difficulties. The feed gradually deteriorat-

ed. Along about May or early June plaintiff noticed that there was a gray color to the feed, and that his hogs would not eat the feed but preferred ear corn. About the same time, or a little later, plaintiff noticed that the feed also had a musty odor and found that his hogs were not gaining weight. Plaintiff complained to Day from time to time about the quality of the feed. Day assured plaintiff that defendant did not have, and never had had, any bad corn. Plaintiff accepted Day's assurance and continued to purchase feed from defendant until he had a conversation with George Murphy, defendant's truck driver, in the Fall of 1967. Plaintiff showed Murphy a sample of bad corn plaintiff had obtained from one Danny Miller, and asked Murphy if the feed in defendant's truck was made out of corn like the sample. Murphy nodded his head to indicate an affirmative response; and then said he could understand, that it had been going on longer than he thought it would. Plaintiff asked how long it had been going on, and Murphy replied, since April. Murphy added that he knew somebody was going to find out, that they asked him to grind the feed at night, and that he couldn't grind the feed all night. According to plaintiff, Murphy also stated that he had been asked to grind at noon when no one was around. Plaintiff refused to accept the truck load of feed and Murphy drove off with it.

We cannot agree with defendant's argument that plaintiff " * * *. knew for several months the feed was bad * * *." True, some doubts regarding the quality of the feed were obviously raised in plaintiff's mind from time to time because of his complaints to Day. But on each occasion Day had a ready and logical explanation (for example, as to the difficulty caused by the wet weather) which plaintiff accepted. Did plaintiff rely, and have the right to rely, on Day's representations? Under the circumstances here shown, we think those questions were issues of fact to be resolved by the jury. Plaintiff had done business with defendant for years, during which he had experienced a good relationship with defendant. He knew and had known Day for years, obviously trusted him, and had never been sold any bad feed in the past. Plaintiff testified that after corn was ground it was difficult to tell (as other evidence was adduced) that the feed was not made from No. 2 corn, and that the failure of his hogs to gain weight at their normal rate did not alert him to the fact that the feed was bad because there were many other things that could cause a hog not to do good. Furthermore, four other experienced hog feeders testified on behalf of plaintiff that they had encountered problems similar to plaintiff's with feed sold by defendant and all except one continued to purchase such feed until the poor quality of the feed became known.

Our conclusion that the foregoing issues were for the jury is supported by the case of Tietjens v. General Motors Corp., Mo., 418 S.W.2d 75, 83, in which it was said:

"Baker v. Bickel, Mo., 386 S.W.2d 105, 110[7], cites 24 Am.Jur. 143, Fraud and Deceit, § 296: ' * * * the right to rely on a representation is generally held to be a question of fact. Even though it lies within the province of the court to state abstractly the right to rely upon a false representation, in a specific case the jury must determine from the facts introduced in evidence whether the party who claims to have been deceived had reason to rely upon the statements made to him. * * * Likewise, questions of fact are whether a party asserting that he has been defrauded by a false representation had knowledge of its falsity and knew the truth or had means of ascertaining it, and should have known it; whether he exercised due care and was justified in placing confidence in the statement; whether he should have made an investigation, or at least have consulted the sources of information to which the other party referred him, or, conversely, whether a representation had the

effect of inducing the person to whom it was made to forgo an investigation * * * .' "

 In Instruction No. 3, given at plaintiff's request, the term "ordinary care" was defined as: " * * * that degree of care that would be reasonable in view of Plaintiff's situation." Defendant maintains that the instruction was erroneous in that it differed from the definition of ordinary care contained in MAI 11.05. It does, but as the Supreme Court said in Tietjens (418 S.W.2d 75):

> "Admittedly MAI 11.05 defining ordinary care does not provide a definition applicable to a fraud case thus requiring a modification for this case."

The modified form used, and approved, in Tietjens was " * * * that degree of care that the plaintiff would reasonably use under his situation and circumstances." There the appellant suggested, and the Supreme Court agreed, that a better definition would have been " * * * that degree of care that would be reasonable in view of plaintiff's situation"—the very definition submitted by plaintiff in this case.

 As stated in its brief, defendant's final point is that "The Court Erred in Giving Instruction No. 6 Because the Respondent Failed to Show Facts From Which a Jury Could Reasonably Find Facts for Allowing Punitive Damage." There is merit in plaintiff's observation that defendant has failed to state in the point relied on which element, necessary to a punitive damage submission, was not supported by the evidence. Nor do we gain much enlightenment on that score in the argument portion of defendant's brief, where all that appears is: " * * * There was nothing to indicate any wilful or intentional attempt to mislead the Respondent and the giving of this instruction was error." We disagree. The testimony regarding Murphy's statements to plaintiff showed that defendant knew that the corn used by defendant was bad, and also showed a de-

liberate and conscious effort on defendant's part to conceal that fact from plaintiff.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.