**TOTAL PETROLEUM, INC., Appellant,**

v.

**Gary J. DAVIS, d/b/a Gary J. Davis Oil Company, Appellee.**

**No. 85–1503.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1985.

Decided April 2, 1986.

Arthur L. Smith, Washington, D.C., for appellant.

James E. Reeves, Caruthersville, Mo., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

LAY, Chief Judge.

Total Petroleum, Inc. (Total) appeals the denial of its motion for a directed verdict on Total's claim against its distributor, Gary Davis, for money owing on an open account. Total also appeals the district court's denial of its motion for a directed verdict in its favor on Davis' counterclaims for fraud and for violation of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–2806 (1982) (PMPA). In the alternative, Total seeks a reversal and remand for a new trial on the grounds that the district court[1] improperly admitted certain evidence and erroneously instructed the jury. For the reasons discussed below, we affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

## Background

Gary Davis and his father-in-law, Bill Rushin, were partners in Rushin-Davis Oil Company (Rushin-Davis). The partnership had two distributor marketing agreements with Total, an oil and gas refiner, pursuant to which Total sold Rushin-Davis gas and other petroleum products. Total made these products available to the partnership at local exchange terminals, some of which were owned and operated by third parties. Rushin-Davis drivers picked up the gasoline at the local exchange terminals, a process known as "pulling product," and received loading tickets reflecting the amount of product pulled. The exchange terminals then forwarded copies of the loading tickets to Total, and Total billed Rushin-Davis for the amount of product pulled.

When disagreement over management of the partnership arose between Davis and Rushin during the summer of 1981, Davis offered to buy Rushin out. Commerce Bank of Poplar Bluff, the bank from which Davis sought financing for the deal, requested Davis to provide some proof that Total would permit Davis to take over the partnership's distributor marketing agreements. Davis therefore contacted Don Wright, the Total regional manager, and asked what was needed to enable Davis to assume the partnership distribution agreements and to release Rushin from the partnership's obligations. Davis testified that Wright said Davis would have to pay off the partnership's entire debt to Total before Total would release Rushin and that Total would furnish the debt figure. At trial, Wright denied making that statement, testifying instead that he told Davis that Total's credit department would have to make the decision and that Davis would probably have to pay the partnership's past due invoices. Wright further testified that,

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

in response to Davis' question regarding what the partnership's current account balance was, Wright replied that because of the lag time in getting information from the terminals to Total, Total could not provide a current balance but that Davis could determine the current balance by looking at the partnership's copies of the loading tickets.

Most of the other events leading up to the closing of the deal between Davis and Rushin are not disputed. Total sent Davis an assumption agreement signed by Total, in which Davis assumed each of the partnership's obligations under the distributor marketing agreements and Total approved the assignment of the agreements. Davis signed the assumption agreement on September 4, 1981. By September 9, 1981, Davis and Rushin had agreed that Davis would pay $78,000 in cash for Rushin's partnership interest and that Davis would assume ownership of all partnership assets and responsibility for all partnership liabilities. Davis formally applied for a $300,000 loan from the bank on September 9. The bank approved the loan the same day. On September 15, Davis gave the bank a promissory note for $300,000 secured by a first deed of trust on all the partnership assets and a second deed of trust on his home. Davis also agreed to pay off a $77,000 debt the partnership owed to the bank. On September 15, Davis and Rushin executed articles of dissolution of the partnership, which were to become effective on (1) Davis' payment of $78,000 to Rushin and Rushin's transfer of the partnership assets to Davis, (2) Rushin's receipt of a release from Total of liability for all partnership debts, and (3) the bank's receipt of assurance from Total that Davis could assume the partnership's distribution agreements. On September 16, the bank applied $77,000 of the loan proceeds to the partnership's outstanding promissory note and placed $78,000 in escrow for payment to Rushin on receipt of the release from Total. Sometime around September 17, Total provided Davis and the bank with a debt figure of approximately $333,705.

The deal was finalized on September 21, 1981, when Bob Huscher, a Total employee, met with Davis and a bank officer to deliver a copy of the receipt and covenant acknowledging payment by Davis to Total of $333,705.31. The receipt and covenant stated that "said sum is in payment of and to be applied to the debts owed to [Total] by Rushin-Davis Oil Company." The bank deposited the remaining loan proceeds in Davis' account, Davis gave Total the amount reflected in the agreement, Huscher gave Rushin the release, and the bank released the $78,000 in escrow to Rushin.

Davis claims that Total told him that the $333,705.31 he paid Total on September 21 represented the total purchase price of all petroleum products that Rushin-Davis had received up to that date for which the partnership had not paid. In fact, the partnership had pulled an additional $155,000 worth of products between September 1, 1981, and September 17, 1981, which had not been invoiced by Total in the course of its billing procedures at the time Total provided Davis with the debt figure. Total subsequently billed Davis for this amount and Davis paid the invoices as they became due, although allegedly under protest. On December 17, 1981, Davis wrote Total a letter stating that he had understood that Total accepted the $333,705.31 check in payment of all debts owed Total by the partnership through September 17, 1981. Davis requested that Total credit his account for the invoices Davis had later paid for products received by Rushin-Davis from September 1 through September 17. Apparently in an attempt to recover amounts for which Davis claimed he was not liable, Davis continued to pull product in December and January for which he refused to pay. On January 20, 1981, after Davis had pulled over $170,000 of product for which he had not paid, Total terminated Davis' right to pull product on credit. Because Davis was unable to obtain gasoline to sell, he was unable to make his loan payments and the bank eventually foreclosed on his business and home.

In April 1982, Total brought suit against Davis to recover the amount due on Davis'

account. Davis counterclaimed for fraud, alleging that Total fraudulently misrepresented to Davis the amount Rushin-Davis owed Total, that Davis had relied on the misrepresentation in deciding to buy out Rushin's interest, and that as a result, Davis lost his business and his home. Davis also claimed that Total's termination of the distributorship agreement violated 15 U.S.C. § 2802 (1982) of the Petroleum Marketing Practices Act. The jury found in favor of Davis on Total's claim for money owed. The jury also returned a verdict in Davis' favor on his claims of fraud and violation of the PMPA. The jury awarded Davis $732,000 on his fraud claim but no damages on his PMPA claim. Total appeals, arguing that the trial court erred in failing to direct a verdict in Total's favor on all claims and counterclaims. Alternatively, Total requests the court to reverse and remand for a new trial because of various evidentiary and instructional errors.

## Discussion

■ We initially note that although Total made a motion for a directed verdict in its favor on all claims and counterclaims, Total did *not* file a motion for a judgment notwithstanding the verdict within ten days after entry of judgment as provided by Fed.R.Civ.P. 50(b). Failure to move for judgment n.o.v. does not preclude review of an earlier motion for a directed verdict. In the absence of such a motion, however, the only relief Total may obtain in this court is the ordering of a new trial; we may not direct the district court to enter judgment for Total. *See Johnson v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 48, 54, 73 S.Ct. 125, 128, 97 L.Ed. 77 (1952); *United States v. Valdosta-Lowndes County Hospital Authority*, 696 F.2d 911, 912–13 (11th Cir.1983); *Karjala v. Johns-Manville Products Corp.*, 523 F.2d 155, 157 n. 2

(8th Cir.1975); *Tri-State Insurance Company v. United States*, 340 F.2d 542, 546 (8th Cir.1965). With this limitation in mind, we consider Total's contentions on appeal.

## A. Total's claim for money owed and Davis' counterclaim for violation of the PMPA.

Total first argues that the trial court erred in failing to direct a verdict in its favor on its claim against Davis for money owed because there was no evidence disputing the fact that Davis received at least some product for which he has never paid. Because Davis did not submit to the jury any affirmative defenses to that debt, Total argues, Total was clearly entitled to recover under the trial court's instruction and the evidence presented at trial.[2]

Davis first attempts to support the jury verdict by pointing to the inconsistencies in the amounts Total claimed Davis owed and the difficulty Total's credit manager had in explaining how Total determined that amount. In light of these inconsistencies, Davis argues, the jury was entitled to find against Total. Although Davis disputes his *liability* for the product Rushin-Davis received from September 1 through September 17, 1981, he does not seriously dispute that the partnership received at least some product for which Davis has never paid. To the contrary, Davis' counterclaim for fraud is premised on Davis' allegation that the figure Total provided Davis did not include approximately $155,000 of product Rushin-Davis had pulled from September 1 through September 17. Davis' fraud counterclaim thus necessarily assumes that Rushin-Davis received at least some product for which Davis has never paid. Moreover, it is undisputed that Davis initially paid the invoices for product the partner-

2. The trial court instructed the jury that it should return a verdict for Total on its claim for money owed if the jury found that:
[F]irst in accordance with the Distribution Marketing Agreement between Plaintiff and Defendant, Plaintiff furnished to Gary J. Davis, d/b/a Gary J. Davis Oil Company, petroleum products and services. And, second, the

Defendant agreed to pay for the same. And, third, the Defendant has not paid for all said petroleum products and services. If you find in favor of the Plaintiff on Plaintiff's claim against Gary Davis, then you must award the Plaintiff the reasonable value of the goods and services furnished.

ship pulled from September 1 through September 17, although Davis contends he made these payments under protest. There is also no question that Davis thereafter pulled over $170,000 of product for which he refused to pay in an attempt to recoup what he thought were unfair charges. In short, although Davis disputed his *liability* for this amount, he did not dispute that he received at least some product for which he has not paid.

■ In the alternative, Davis argues that the evidence presented at trial would support a jury finding that Total's misrepresentation of the amount Rushin-Davis owed as of September 17, 1981, estopped Total from later attempting to collect any additional amount. Although Davis raised estoppel by fraud as an affirmative defense to payment in his answer, the trial court did not instruct the jury on fraud as a defense and Total did not request such an instruction. Under Missouri law, failure to request an instruction on an affirmative defense such as estoppel by fraud constitutes an abandonment of that defense. *See, e.g., State ex rel. Highway Commission v. City of Washington,* 533 S.W.2d 555, 559 (Mo.1976); *Strickner v. Brown,* 491 S.W.2d 253, 254–55 (Mo.1973). An affirmative defense so abandoned is not preserved for appellate review. *State ex rel. Highway Commission,* 533 S.W.2d at 559. Thus, whether or not the evidence supported a claim of estoppel by fraud, Davis may not now rely on that theory to support the jury's verdict because he did not properly present the issue of estoppel by fraud to the jury. *Cf. Sloss v. Farmers Mutual Automobile Insurance Co.,* 350 S.W.2d

446, 451 (Mo.Ct.App.1961) (plaintiff may not recover on theory of case not consistent with that on which complaint and instructions proceeded even if evidence might have permitted recovery on that theory).

■ In light of Davis' failure to request an instruction on the affirmative defense of estoppel, we agree with Total that the trial court erred in submitting to the jury the question of Davis' *liability* for product received but not paid for. We find, however, that the evidence Total presented as to *the amount* owed by Davis was not so clear as to entitle Total to a directed verdict on the *amount* of its claim. If Total had properly moved for judgment n.o.v., we would remand the case to the district court with directions to enter judgment for Total and to order a new trial solely on the issue of damages. Because of Total's failure to move for judgment n.o.v., however, we must remand the entire claim to the district court for a new trial on Total's claim against Davis for money owed. *See Johnson,* 344 U.S. at 54, 73 S.Ct. at 128.

Total also claims that the absence of any justification for the nonpayment of Davis' debt to Total was controlling on Davis' counterclaim against Total for violation of the PMPA.[3] Total focuses on the language in the PMPA instruction directing the jury to find in Davis' favor only if it determined that "Davis does not owe Total Petroleum Company for product purchased from Total Petroleum Company." Because the evidence clearly established that Davis owed Total money for product received but not paid for, Total argues, the trial court also

---

**3.** The trial court instructed the jury on Davis' PMPA counterclaim as follows:

On Defendant, Gary Davis' Counter Claim for violation of the Petroleum Market [sic] Practices Act, your verdict must be for the Defendant, Gary Davis, and against Total Petroleum, Inc. if you believe, First, Gary Davis does not owe Total Petroleum Company for product purchased from Total Petroleum Company. Second, Gary Davis did not willfully adulterate, mislabel or misbrand Total Petroleum's motor fuel. And that, Third, as a direct result the Defendant, Gary Davis, was damaged. You cannot find that the use of APCO

gasoline signs by Gary Davis after January the 20th, 1982, was a misbranding or mislabeling of APCO products if you find that Total Petroleum continued to charge monthly rental for the signs after January the 20th, 1982. * * * In Defendant's, Gary Davis, counter claim for violation of Petroleum Marketing Practices Act, your verdict must be for the Plaintiff, Total Petroleum, Inc. unless you believe that the Defendant, Gary Davis, did not fail to pay Total Petroleum in a timely manner when due all sums to which Total Petroleum was legally entitled to during the 60 days prior to June the 28th, 1982.

erred in not directing a verdict in its favor on Davis' PMPA counterclaim.

We need not decide this issue because although the jury found Total violated the PMPA, the jury did not award Davis damages and Davis did not appeal the jury verdict. Thus, regardless of whether or not Davis owes Total money for product received but not paid for, we need only sustain the judgment entered by the district court on the jury verdict that Davis "on the claim for violation of the Petroleum Marketing Practices Act have and recover from plaintiff, Total Petroleum Company the sum of Zero Dollars ($0.00)."

### B. Davis' counterclaim for fraud

Total also contends that the trial court erred in not directing a verdict for Total on Davis' counterclaim for fraudulent misrepresentation, arguing that Davis failed to make a submissible case of fraud. The essential elements of fraudulent misrepresentation under Missouri law are a representation, its falsity, its materiality, the maker's intent that it should be acted on by the hearer and in the manner reasonably contemplated, the hearer's ignorance of its falsity, detrimental reliance on its truth, the right to rely thereon, and damages resulting from the reliance. *Morill v. Becton, Dickinson and Co.*, 747 F.2d 1217, 1222 (8th Cir.1984); *MacCurrach v. Anderson*, 678 S.W.2d 459, 462 (Mo.Ct.App.1984). Although Total concedes for purposes of argument that it misrepresented the amount of the partnership's debt, Total argues that Davis presented no evidence on the elements of actual reliance, reasonableness of reliance, and damages resulting from the reliance. Total further contends that the amount awarded by the jury is in any event excessive.

Total first argues that Davis did not rely on Total's representation of the amount of the partnership's debt in deciding whether to buy out his partner because Davis had determined the purchase price of Rushin's interest and how much money he needed to borrow to buy out Rushin before Total supplied him with the $333,705.31 debt figure. Moreover, Total argues, Davis could not have relied on Total's representation because Davis could not have withdrawn from his agreement to buy out Rushin had Total supplied him with a figure representing the full amount of the partnership debt on September 17, 1981. By that date, Total contends, Rushin and Davis had already signed the partnership dissolution agreement, the bank had approved Davis' loan, and Davis had signed a $300,000 promissory note to the bank secured by a mortgage on his home and the partnership assets.

We cannot accept Total's contention that Davis would have been bound to go through with the deal on September 21, 1981, even if Davis had learned that the partnership debt was $155,000 greater than he originally thought. Although the partnership dissolution agreement was dated September 15, 1981, prior to the time Total supplied Davis with the $333,705.31 debt figure, the agreement expressly states that it was not to become effective until (1) Davis paid Rushin $78,000 and Rushin transferred his partnership interest to Davis; (2) Total consented to Davis' assumption of the partnership's distribution agreements; and (3) Total released Rushin of all liability for the Rushin-Davis debt. Because Total's release of Rushin was contingent on Davis' payment to Total of the amount requested by Total, Total is simply incorrect in asserting that Davis was bound to go through with the deal regardless of the amount requested by Total to release Rushin.

Having determined that Davis could have withdrawn from his agreement to purchase Rushin's interest until the deal was finalized on September 21, 1981, we conclude that Davis presented sufficient evidence from which the jury could have concluded that Davis would not have gone through with the deal had he known the actual amount of the partnership debt. Davis testified at trial that he would not have borrowed $300,000 and mortgaged his home and business to buy out Rushin had he known the partnership owed $155,000 more than Total represented. Furthermore, a bank officer testified that the bank

would not have released the loan proceeds, all of which were still in the bank's control until September 21, 1981, had it known the partnership's debt was so large. In light of this and additional evidence presented at trial, the question of whether Davis actually relied on Total's representation of the amount of the partnership's debt was properly submitted to the jury. *See Morrill v. Becton, Dickinson and Co.*, 747 F.2d 1217, 1223 (8th Cir.1984) (applying Missouri law); *Gollwitzer v. Theodoro*, 675 S.W.2d 109, 110 (Mo.Ct.App.1984).

■ Total's contention that Davis presented no credible evidence of the reasonableness of his reliance is similarly without merit. At trial, several Total employees did testify that Davis, and not Total, had the superior means to determine the current amount of the partnership's indebtedness and to verify the debt figure provided by Total. Davis and Rushin testified, however, that they could not have determined the actual amount of the partnership's debt because of Total's complex billing system and that they had always relied on Total in the past to correctly bill the partnership without experiencing any inaccuracies. The difficulty Total's employees had in explaining to the jury the amount Total claimed Davis still owed clearly supported this testimony. Under these facts, it was for the jury to decide whether Davis reasonably relied on Total to provide him with the correct figure of the partnership's indebtedness to it. *See Crues v. KFC Corp.*, 729 F.2d 1145, 1150 (8th Cir.1984) (applying Missouri law), *later op.*, 768 F.2d 230 (1985); *Essex v. Getty Oil Co.*, 661 S.W.2d 544, 550 (Mo.Ct.App.1983).

■ Total also contends that Davis presented no evidence of damage resulting from Davis' reliance on Total's misrepresentation. The thrust of Total's argument is that because Davis suffered no immediate damage when he purchased Rushin's partnership interest, Davis was not damaged by the misrepresentation. This argument must clearly fail. As this court stated in *Sedco International, S.A. v. Cory*,

683 F.2d 1201 (8th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed. 2512 (1982), the maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies on the misrepresentation if the reliance is a substantial factor in determining the course of conduct that results in the loss. *Id.* at 1208 (citing Restatement (Second) of Torts § 546 (1977)). In *Sedco*, we upheld a trial court finding that certain misrepresentations by plaintiffs caused the defendant to make loans to a third party which the third party never repaid because those misrepresentations were a substantial factor in causing the defendant to make those loans. *Id.* at 1208–10.

In the case at bar, Davis presented evidence to support his assertion that he was unable to repay Total on his own because Total had understated the amount of the partnership's debt that Davis had assumed, that Total cut off his supply of petroleum products because Davis' account was past due, and that without any product to sell, Davis was unable to make his loan payments, causing the bank to foreclose on his home and business. The jury was instructed that in order to find Total liable for fraud, it must find that "as a *direct result* of such representation, Defendant, Gary Davis, was damaged" (emphasis added). The jury was also instructed that if it found Total liable, it should award Davis "such sum as you will [sic] believe will fairly and justly compensate Gary Davis for any damages you believe he sustained *as a direct result of Total Petroleum, Inc.'s fraudulent misrepresentation*" (emphasis added). We thus hold that Davis presented sufficient evidence from which a jury could conclude that Davis suffered damage as a result of his reliance on Total's representation. *See Crues v. KFC Corp.*, 729 F.2d at 1151 (applying Missouri law).

■ In a related argument, Total asserts that even if Davis presented sufficient evidence that Davis suffered damages

as a result of the alleged misrepresentation, the amount of damages awarded by the jury is duplicative and excessive as a matter of law. Although Total objected to the absence of evidence to support the causation element of the fraud verdict-directing instruction,[4] Total did not object to the trial court's instruction on determining the amount of damages if the jury found that fraud had occurred.[5] Nor did Total move for a new trial or request the trial court for a remittitur on the grounds that the jury award was duplicative and excessive. In the absence of exceptional circumstances not present here, the issue of the excessiveness of a jury verdict must first be presented to the district court in a motion for a new trial in order to preserve the issue for appellate review. *DeWitt v. Brown,* 669 F.2d 516, 524 (8th Cir.1982); *Carlton v. H.C. Price Co.,* 640 F.2d 573, 577 (5th Cir.1981); *cf. Haley v. Wyrick,* 740 F.2d 12, 13–14 (8th Cir.1984) (failure to raise inadequacy of jury verdict in motion for new trial precludes appellate review of that issue). Because Total did not raise the issue of the excessiveness of the jury verdict to the district court, there is no basis for appellate review. *DeWitt,* 669 F.2d at 524.

## C. Instructional and Evidentiary Errors

Total's final argument is that even if the trial court did not err in failing to direct a verdict in its favor on each claim submitted to the jury, a new trial is nonetheless required because of alleged errors in the jury instructions and the admission of certain evidence. In particular, Total argues that the trial court improperly permitted Davis to examine a Total employee as to the employee's opinion of Davis' state of mind; that the verdict-directing instruction on Davis' fraud claim improperly described the claimed misrepresentation and improperly submitted the issue of Total's scienter to the jury in the disjunctive; and that the trial court improperly submitted to the jury the issue of whether a fiduciary relationship existed between Total and Davis. After thoroughly reviewing the record and applicable case law, we conclude that these alleged errors are without merit which, with the exception of Total's last contention, we need not address here.

Total argues that the trial court's instruction that the jury could consider the relationship between Total and Davis in assessing the materiality of the alleged misrepresentations and the reasonableness of Davis' reliance enabled the jury to find that a fiduciary relationship existed between Total and Davis.[6] This in turn, Total argues, allowed the jury to find that Davis' reliance on Total's misrepresentation was justified.

■ It is true, as Total contends, that under Missouri law a fiduciary relationship

---

**4.** As noted above, the trial court instructed the jury that in order to find for Davis on his fraud counterclaim, the jury must find, *inter alia,* that "Sixth, as a direct result of such representation, Defendant, Gary Davis, was damaged."

**5.** The trial court instructed the jury on the determination of damages as follows:

If you find in favor of the Plaintiff—or the Defendant, Gary Davis, on his counter claim for fraud, then you must award Gary Davis such sum as you will [sic] believe will fairly and justly compensate Gary Davis for any damages you believe he sustained as a direct result of Total Petroleum, Inc.'s fraudulent misrepresentation.

**6.** The trial court instructed the jury as follows: In determining what material facts Defendant, Gary Davis, may have reasonably relied upon, you may consider the relationship between Total Petroleum Company and Gary Davis. You may consider whether Total Petroleum Company held a position, by reason of their business relationship, which would have an effect upon the extent upon which relations [sic] reliance was placed upon statements made by the Total Petroleum Company as to the amounts due from Rushin-Davis Oil Company. And whether in terms of the relationship, which existed between them, Gary Davis was justified in placing trust and confidence in Total Petroleum Company's calculation of the amount due. You may also consider and weigh all the evidence and the aspects and factors of the relationship between Total Petroleum Company and Gary Davis which you find important as to whether Gary Davis relied upon them.

does not ordinarily exist between an oil and gas company and its distributors. *See Sagehorn v. Phillips Petroleum Co.,* 648 S.W.2d 647, 650 (Mo.Ct.App.1983). The trial court in the case at bar, however, did not instruct the jury that a fiduciary relationship existed between Total and Davis nor did the instruction invite the jury to find that such a relationship existed. Rather, the trial court merely instructed the jury that in determining whether the alleged representation was material and whether Davis' reliance was reasonable, it could consider the business relationship between Total and Davis. The relationship between the parties is clearly an appropriate consideration for the jury in resolving these issues. *See Abbey v. Heins,* 546 S.W.2d 553, 557 (Mo.Ct.App.1977) (in assessing reasonableness of reliance, courts consider, *inter alia,* relationship between parties); *Throckmorton v. M.F.A. Central Cooperative,* 462 S.W.2d 138, 140 (Mo.Ct.App.1970) (in finding question of reasonableness of reliance was properly submitted to jury, court noted length of parties' business relationship and absence of prior disputes between parties); *Hanson v. Acceptance Finance Co.,* 270 S.W.2d 143, 149 (Mo.Ct.App.1954) (in assessing reasonableness of reliance, relationship between parties is one factor to consider).

■ Even if the trial court's instruction did improperly suggest to the jury that a fiduciary relationship existed between Total and Davis, thus relaxing the standard of care Davis should have exercised in relying on Total's representation, any possible prejudice was harmless. It is well-settled that in reviewing a trial court's instructions for error, the court of appeals must consider the instructions as a whole. *See, e.g., Chohlis v. Cessna Aircraft Co.,* 760 F.2d 901, 904–05 (8th Cir.1985). Moreover, a single erroneous instruction does not require reversal if the error was cured by a

subsequent instruction or by considering the entire charge. *See, e.g., Hrzenak v. White-Westinghouse Appliance Co.,* 682 F.2d 714, 719 (8th Cir.1982). In this case, the jury was twice instructed that in order to find in favor of Davis on his fraud counterclaim, the jury must first find that Davis used "ordinary care" in relying on Total's representation—once in the instruction proposed by Davis and once in the converse instruction proposed by Total. The trial court also properly instructed the jury that "ordinary care, as used in these instructions means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." Viewing the instructions as a whole, we cannot say that the trial court improperly relaxed the standard for determining whether Davis' reliance on Total's representation was reasonable.

**Conclusion**

For the reasons set forth above, we hold that the trial court erred in failing to direct a verdict in Total's favor on Total's claim for money owed and remand to the district court for a new trial on that issue.[7] We find no error, however, in the trial court's failure to direct a verdict on Davis' counterclaim for fraud. We further find that none of the alleged errors in the jury instructions or the admission of evidence otherwise requires reversal of the jury verdict.

---

**7.** Any recovery by Total on the debt owing Total must be deducted from Davis' recovery so that a single judgment may be entered.