944 F.Supp. 793 (1996)
HILLSIDE ENTERPRISES, INC., d/b/a Hillside Vineyards, Plaintiff,
v.
CARLISLE CORPORATION, d/b/a Delaware Carlisle Corp., and Continental Carlisle Inc., Defendants.
No. 4:89CV2198SNL.
United States District Court, E.D. Missouri, Eastern Division.
November 6, 1996.
*794 *795 John A. Walsh, St. Louis, MO, for Hillside Enterprises, Inc.
Michael A. Clithero, Richard H. Kuhlman, Peper and Martin, St. Louis, MO, for Houston Distributing Company, Inc.
John A. Walsh, St. Louis, MO, pro se.
David Wells, Thompson Coburn, St. Louis, MO, for Continental Carlisle Incorporated.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court on Houston Distributing Co.'s motion to intervene (# 108), filed March 28, 1996; and plaintiff's counsel's motion to impress attorney's lien upon plaintiff's judgment (# 106), filed March 8, 1996. Responsive pleadings have been filed in connection with both pending motions.
The matters presently pending before the Court arose subsequent to the trial of the original action. The original action arose from a failed business venture involving the parties. Briefly, defendant was to develop a plastic wine glass which would contain the plaintiff's wine and be sold as a "prefilled" packaged product to the consumer. Plaintiff was to purchase a certain amount of these wine glasses for (re)sale to its retail customers. Unfortunately, there were manufacturing defects in the glasses causing the wine to oxidize and making the wine unsuitable for consumption. Plaintiff Hillside sued defendant Continental Carlisle for breach of the purchase agreement wherein defendant agreed to develop and manufacture, and plaintiff agreed to purchase, a semi-disposable plastic wine glass product. Continental counterclaimed for recovery of payment for *796 the semi-disposable wine glasses shipped on account to Hillside pursuant to the same purchase agreement.
In March 1994, after trial of the matter, judgment was entered in favor of Hillside for $465,000.00 on its claims for breach of the purchase agreement and misrepresentation; and in favor of Continental Carlisle for $164,948.17 on its counterclaim. The judgments were affirmed on appeal, except that the Eighth Circuit Court of Appeals ruled that Continental Carlisle was entitled to prejudgment interest on its judgment at the contractual rate of one and one-half percent (1½%) per month and postjudgment interest at the statutory rate of 4.22% per year (pursuant to 28 U.S.C. § 1961). The case was remanded to this Court pursuant to the appellate court's directive to calculate and award Continental Carlisle prejudgment and post-judgment interest on its judgment.
Shortly after Hillside filed suit against Continental Carlisle, one of Hillside's customers, Houston Distributing Co. filed suit against Hillside for "bad wine". Specifically, Houston Distributing Co. brought an action against Hillside under § 400.2-314 R.S.Mo. for "unmerchantable" wine. On or about September 7, 1990 Hillside and Houston entered into a consent judgment wherein Hillside conceded that Houston had been damaged as a result of Hillside's breach of contract. Judgment was agreed to, and entered by the Honorable Roy W. Harper, in the amount of $100,635.67 plus interest at the legal rate pursuant to 28 U.S.C. § 1961. On or about December 3, 1990 Houston attempted to execute upon its consent judgment in the amount of $102,542.57 (amount of the judgment plus accrued interest). The writ of execution was returned unexecuted, as Hillside lacked the assets to satisfy the judgment.
On May 6, 1994, following the conclusion and entry of judgment(s) in the instant case, Houston issued another garnishee summons and set of garnishee interrogatories to be served upon defendant Continental Carlisle. In July 1994 Houston and Continental Carlisle agreed to delay the filing of Continental Carlisle's interrogatory answers, pending resolution of the cross-appeals filed in the instant case.[1] In January and February 1996, Houston again issued a garnishee summons to be served upon Continental Carlisle. The summons reflects that the outstanding amount due Houston, pursuant to its consent judgment, now totalled $100,635.67, plus accrued interest of $50,728.51. A writ of execution was filed on February 22, 1996. As of today's date, Houston's judgment against Hillside remains totally unsatisfied.
On February 23, 1996 counsel for plaintiff Hillside wrote Continental Carlisle informing it that on or about April 5, 1994, following the conclusion of the underlying action, counsel and Hillside "renegotiated" counsel's contingency fee agreement. The "renegotiation" resulted in counsel's fee being increased from a one-third cut of monies recovered to "one-half of all gross sums recovered, before counterclaims, set-offs and expenses are deducted therefrom, and that he shall have a lien as to the said gross judgment in favor of Hillside and against Continental Carlisle for such fees and for all sums expended in the preparation and prosecution of the case." See, Exhibit 1 to Movant Walsh's memorandum in support of attorney fee lien; Exhibit E to Houston's Motion to Intervene.
Movant Walsh seeks to execute upon his attorney lien in the amount of $252,161.87, plus expenses prior to any set-off of Continental Carlisle's judgment or execution upon Houston's consent judgment. Continental Carlisle seeks to set-off its judgment of $164,000.00, plus prejudgment and post-judgment interest, against Hillside's judgment of $465,000.00 prior to execution of movant Walsh's attorney fee lien. Finally, Houston seeks to intervene in order to execute and satisfy its consent judgment of approximately $152,000.00 prior to the execution of the attorney fee lien or the set-off of Continental Carlisle's judgment.

*797 Houston's Motion to Intervene

Houston seeks to intervene pursuant to Rule 24(a)(2) or Rule 24(b) Fed.R.Civ.P. Rule 24(a)(2) permits intervention as a matter of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Houston contends that it has a significant interest in the disbursement of the judgment obtained by Hillside from Continental. It notes that its consent judgment was obtained several years prior to entry of judgment in the underlying action; and that the judgment debtor (Continental Carlisle) has been garnished well in advance to Walsh's assertion of his attorney lien. It argues that it is imperative that it be allowed to intervene in order to protect its interest in the judgment obtained by Hillside because sufficient assets do not exist to satisfy the attorney's fee lien, litigation costs, and Houston's consent judgment. Hillside opposes the intervention and argues that Houston had no legal interest in the transactions giving rise to the underlying cause of action. Hillside contends that although Houston was "victim" in an "attenuated and remote" sense due to Continental Carlisle's breach, it was not in privity with nor did it ever have a cause of action against Continental Carlisle. Hillside argues that Houston is simply one of several judgment creditors, and there is no valid reason to give it priority over the other judgment creditors, including plaintiffs attorney.
In order to intervene as a matter of right pursuant to Rule 24(a), a motion to intervene must be "timely" and the movant must 1) have a recognized interest in the subject matter of the primary lawsuit; 2) that interest must be one that might be impaired by the disposition of the lawsuit; and 3) the interest must not be adequately protected by the existing parties. Mausolf, et al. v. Babbitt, et al., 85 F.3d 1295, 1299 (8th Cir.1996); United States of America v. Union Electric Co., 64 F.3d 1152, 1160 (8th Cir.1995); Mille Lacs Band of Chippewa Indians, et al. v. State of Minnesota, et al., 989 F.2d 994, 997 (8th Cir.1993); Fritts v. Niehouse, 604 F.Supp. 823, 826 (W.D.Mo.1984). Recently, the Eighth Circuit Court of Appeals determined that inherent in Rule 24(a) is a requirement that would-be intervenors have Article III standing to litigate their claims in federal court. Mausolf, at 1299-1301.
After careful consideration of the submitted pleadings, the Court determines that movant Houston Distributing Co.'s motion to intervene as a matter of right, under Rule 24(a)(2), will be denied for the following reasons.
Firstly, Houston Distributing lacks standing to intervene in the present case. The constitutional requirement of "standing" requires 1) injury-in-fact; 2) causation, i.e., a causal connection between the alleged injury and the conduct being challenged; and 3) redressability. Mausolf, at 1301 citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Friends of the Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 886 (8th Cir.1995). Houston has shown an "injury-in-fact"; i.e. it has an outstanding consent judgment against Hillside. However, Houston fails to show the causal connection between its outstanding consent judgment and the underlying lawsuit present in this case. Houston's lawsuit against Hillside was a Missouri U.C.C. action based upon the merchantability of the wine sold to it by Hillside. The underlying lawsuit in the present case was premised upon a breach of a purchase agreement between Hillside and Continental Carlisle for the development and purchase of a "wine-in-a-glass" product. Furthermore, Houston has failed to provide any caselaw which supports its argument that as a judgment creditor, by virtue of a consent judgment entered in another lawsuit, it has a legally cognizable right or protectable interest in dictating the manner of distribution of a judgment rendered in another lawsuit.
Even if Houston had Article III standing, it still does not have a recognized interest in the subject matter of the underlying *798 lawsuit. As stated before, the claims adjudicated in its lawsuit against Hillside differ substantively from the claims adjudicated in this lawsuit. Houston had no legal interest in the transactions giving rise to the instant lawsuit. It was not a party to or in any way in privity to the contract relationship established between Hillside and Continental Carlisle. Without a doubt its injury is traceable to Continental Carlisle's failure to successfully develop a plastic wine glass that would withstand the oxidation of the wine over time. However, such injury was only collateral to the claims litigated in this lawsuit.
Finally, the Court finds that the motion is untimely. Whether a motion to intervene is timely is determined by considering all of the circumstances of the case. U.S. v. U.E., at 1158-59; Mille Lacs Band of Chippewa Indians, at 998; McClain v. Wagner Electric Corp., 550 F.2d 1115, 1120 (8th Cir. 1977). In determining timeliness, three (3) factors should be considered: 1) the reason for the would-be intervenor's delay in seeking intervention; 2) how far the litigation has progressed; and 3) how much prejudice the delay in seeking intervention may cause to other parties if the intervention is allowed. U.S. v. U.E., at 1158-59; Mille Lacs Band of Chippewa Indians, at 998; McClain, at 1120. The fact that judgment has already been entered does not necessarily preclude later intervention; however, there is "considerable reluctance on the part of courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant. Motions for intervention after judgment ordinarily fail to meet this exacting standard and are denied." McClain, at 1120 quoting 7A Wright & Miller, Federal Practice and Procedure, Civil, § 1916, pgs. 579-80.[2] If an applicant's motion to intervene is not timely filed, the applicant is barred from intervening. U.S. v. U.E., at 1159; Mille Lacs Band of Chippewa Indians, at 998.
Movant Houston was well aware of this litigation. It was well aware of the fact that the only asset Hillside had was this litigation. It chose to wait not only until after the judgment(s) were entered, the judgment(s) affirmed on appeal, but also after Hillside's counsel asserted his attorney's fee lien, to seek intervention. It has offered absolutely no reason for the delay in seeking intervention. Whatever reasons it asserts now for intervening existed several years ago prior to the conclusion of the underlying lawsuit. Its only interest in the underlying lawsuit is in procuring enough money from Hillside's judgment in this case to satisfy Hillside's outstanding debt to Houston. Its attempt now to protect that interest is untimely and leave to intervene as a matter of right will be denied. See, Sweeney, et al. v. Bond, et al., 669 F.2d 542, 547 (8th Cir.1982) (application to intervene after final judgment entered found to be untimely).
In the alternative, Houston seeks permissive intervention pursuant to Rule 24(b). Rule 24(b) also requires a "timely application" and that the would-be intervenors' claims involve common questions of law or fact as the underlying action. After careful consideration of the pleadings, the Court finds that Houston's motion to intervene, pursuant to Rule 24(b), will be denied.
For all of the reasons stated in reference to the Court's Rule 24(a)(2) analysis, Houston's motion to intervene is untimely. Furthermore, Houston's claims do not involve common questions of law or fact as the underlying action. As stated previously, Houston's lawsuit against Hillside was a Missouri U.C.C. action regarding the merchantability of the wine Hillside sold to Houston. The claims present in the underlying action were based upon Continental Carlisle's alleged breach of a purchase agreement and misrepresentations made in furtherance of the alleged breach. Each lawsuit involved different transactions based upon different contracts. There are no common questions of law or fact existing between the claims pursued in each of the lawsuits. The only connection that Houston has to the underlying lawsuit is that it seeks a portion of the judgment entered in this *799 lawsuit to pay off Hillside's outstanding judgment owed in Houston's lawsuit. This is not a sufficient basis upon which to allow permissive intervention under Rule 24(b).

Attorney Fee Lien v. Set-off
Hillside's counsel (John A. Walsh) seeks to execute his attorney's fee lien on Hillside's judgment prior to the satisfaction of defendant Continental Carlisle's judgment. Continental Carlisle counters that it has a right to set-off its judgment prior to disbursing any funds to satisfy Walsh's lien.
Prior to adjudicating these competing interests, the Court must first address the issue of which state's laws govern this adjudication. Walsh asserts that Oklahoma law governs, while Continental Carlisle asserts that Missouri law governs the issue of priority in this case.
The underlying action was governed by Oklahoma law because the parties' contract stipulated that Oklahoma law would govern the contract and any disputes arising therefrom. However, the present dispute does not arise from the contractual relationship between Hillside and Continental Carlisle. The present dispute concerns the disposition of the judgment(s) entered in the underlying action. The substantive issue in the present dispute is which has priority: an attorney's fee lien or right to set-off. This issue has nothing to do with the substantive issues litigated in the underlying action. Furthermore, Walsh is pressing his attorney's fee lien pursuant to Missouri law; more precisely, §§ 484.130 and 484.140 R.S.Mo. It only stands to reason that Missouri law should also dictate what priority an attorney's fee lien has in relation to other competing interests in a client's favorable judgment. Consequently, the Court determines that Missouri law shall govern the issue of priority of Walsh's attorney's fee lien.
Under Missouri law, two statutes cover compensation of attorneys for representation of clients and to liens created to ensure such compensation. Section 484.130 R.S.Mo. is the general attorney fee lien statute under which an attorney has a lien for services rendered from the commencement of a lawsuit or counterclaim, pursuant to an agreement between the attorney and client, which is not restrained by law. Section 484.140 R.S.Mo. relates to compensation agreed to by virtue of a contingency fee contract whereby an attorney's compensation is restricted to a certain portion or percentage of recovery due to the successful resolution of the client's claim by either litigation or settlement. See, Passer v. United States Fidelity & Guaranty Co., 577 S.W.2d 639, 644 (Mo.1979). In the instant case, movant Walsh has moved to impress his attorney's fee lien in accordance with the terms of a "renegotiated" contingency fee contract which grants Walsh 50% of the judgment entered in his client's favor. Furthermore, Walsh contends that his attorney's fee lien should be honored first, i.e. prior to any set-off of defendant Continental Carlisle's judgment and/or the outstanding judgment owed by Hillside to Houston Distributing. Consequently, it is clear that Walsh is asserting his claim pursuant to § 484.140 R.S.Mo.
Continental Carlisle contends that Missouri caselaw and statutory law provide that set-off of Continental Carlisle's counterclaim judgment takes priority over Walsh's attorney's fee lien. It relies primarily upon four (4) Missouri cases and Missouri's counterclaim statute[3] in support of this argument. However, after carefully reviewing these cases and the cited statute, the Court finds little support for defendant's broad conclusion that its counterclaim judgment must be set-off against Hillside's judgment prior to impressing Walsh's lien against the Hillside's judgment.
Firstly, defendant Continental Carlisle has cited and quoted the wrong Missouri statute on set-off (as part of the scope of a counterclaim). In fact, defendant's cited and quoted statute was repealed in 1943. The correct *800 version of § 509.420 R.S.Mo. reads as follows:
A pleading shall state as a counterclaim any claim, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrences that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.
The Historical and Statutory Notes to § 509.420 specifically state that:
"The 1943 act (Laws 1943, p. 353, §§ 73 to 76, 78 to 80) formulated this section and §§ 509.430 to 509.450, 509.470, 509.480, 511.040, to replace the law governing setoff and counterclaim formerly contained in R.S. 1939, §§ 928, 929, 989 to 1001. [the statute quoted by defendant Continental Carlisle was the repealed R.S. 1939 statute] The 1943 act broadened the scope of counterclaims by specifically permitting the bringing of third parties, by using more general terms to describe the nature of claims which may be advanced as counterclaims, and by providing for counterclaims by amendment and supplemental pleading. See, also, provision for cross-claims in § 509.460.
The former remedy of "set-off" is now included within the scope of the remedy of counterclaim."
Nothing in the language of § 509.420 R.S.Mo. remotely gives rise to any reasonable interpretation that the purpose of this section is to permit an automatic set-off of original claim and counterclaim judgments, as argued by defendant.
Furthermore, Missouri law only provides that the remedy of set-off is available, not mandatory. Section 509.430 R.S.Mo. reads as follows:
"A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party."
The language contained in § 509.430 is permissive, not mandatory. It grants the trial court discretion in reviewing the circumstances of each case, and applying set-off as it deems fair and equitable.
As for the cases cited by the defendant, none of them provide the defendant with the solid foundation for its argument as it believes they do. In James E. Brady & Co. v. Eno, 992 F.2d 864 (8th Cir.1993), an insurance product developer had brought an action against an insurance company for breach of contract and breach of fiduciary duties, and the insurance company had counterclaimed for breach of contract. The district court entered judgment in favor of the developer on the breach of fiduciary duties claim, and entered judgment in favor of the insurance company on its breach of contract counterclaim. The decision was affirmed by the Eighth Circuit Court of Appeals. Brady, supra. In addressing the issue of set-off, the Court simply stated that Missouri law forbidding set-off of contract and tort claims no longer was viable, and that "[t]he entry of one final net judgment in a situation as this is the usual practice and is well supported by Missouri law." Brady, at 870. Then, as an afterthought, in one last sentence, the Court stated that "[f]urthermore, JEBCO's counsel's attorney lien against JEBCO's $450,000 judgment is inferior to PFL's right to obtain a final judgment for the net amount." Brady, at 870. The Court cited Benton v. Alcazar Hotel Co., 354 Mo. 1222, 194 S.W.2d 20, 25 (1946) in support of this sentence. There is absolutely no analysis or review of the issue regarding set-off and a competing attorney's fee lien. There is no review of §§ 484.130 and 484.140.
In the case of Benton, supra., the case was a declaratory judgment action. The trial court rendered a verdict awarding the defendant (on its counterclaim) possession of a hotel and damages for plaintiff's delay in surrendering possession of said hotel; and rendering a judgment in favor of the plaintiffs against defendant for defendant's default in payments under an installment contract to purchase the said hotel. The trial court (as affirmed by the Missouri Supreme Court) did not enter two separate judgments; but instead, entered a single judgment which *801 conditioned payment by one party upon the payment by the other party. As to the issue of the defendant's counsel's attorney fee lien, the Missouri Supreme Court stated:
"Such lien, however (if it would be necessary for Alcazar's counsel to enforce it) would be subsequent and subservient to the right of owners-plaintiffs to have Alcazar's relief upon its claim made conditional upon satisfaction of the claim of owners-plaintiffs as by the judgment and decree declared and determined, inasmuch as the claims of owners-plaintiffs and of Alcazar arose in the course of this very action and inhered in and arose out of the same transaction."
Benton, at 25. The Benton case did not involve a set-off between an attorney's fee lien and a separate counterclaim judgment. In making the above-referenced holding, the Missouri Supreme Court relied primarily upon the case of Hinde v. United States Fidelity & Guaranty Co., 135 Mo.App. 160, 115 S.W. 1081 (1909).
The Hinde case, supra, (another case cited by defendant Continental Carlisle in support of its argument that the right of set-off has priority over an attorney's fee lien) is a case decided upon the repealed 1939 Missouri statute(s) which made a counterclaim set-off mandatory. Consequently, by relying upon a case which was no longer good law, the Missouri Supreme Court may have made an error in judgment in concluding that the attorney's fee lien automatically was subservient to a set-off of plaintiff's judgment against the defendant's judgment.
Finally, the defendant cites the case of Rape v. Mid-Continent Building Co., 318 S.W.2d 519 (Mo.App.1958) for the proposition that "[o]ne of the acknowledged purposes of this section [referring to § 509.420 R.S.Mo.] is to permit an automatic setoff of original claim and counterclaim judgments." Defendant Continental Carlisle's Response in Opposition to Movant Walsh's Motion to Impress Attorney's Fee Lien, pg. 8. After carefully reviewing this case, the Court is at a loss as to why defendant would cite it in support of its position. Firstly, defendant (in its response) quotes the repealed version of § 509.420 R.S.Mo. The correct version is cited in the Rape case and the issue clearly addressed by the Rape court is whether, under the correct version of § 509.420 R.S.Mo., the plaintiffs' claim for a mechanic's lien comes within the provision of § 509.420 as a compulsory counterclaim. Rape, at 522-23. The only other issue addressed by the Rape court was whether by virtue of the Missouri statute on mechanic's lien, the court in Kansas City had jurisdiction of a lien suit on property located outside of Kaw Township (which sits within the jurisdiction of the Circuit Court of Independence, Missouri). Rape, at 523-24. The Rape case did not involve in any manner any issue involving set-off or the enforcement of an attorney's fee lien.
This Court is unable to locate any current Missouri caselaw which even remotely touches upon the issue of priority regarding attorney's fee liens and a counterclaim judgment involving set-off.[4] Consequently, the Court has chosen to address this issue instead by reviewing Missouri caselaw which generally discusses set-off and situations in which it is applied.
It is clear that Missouri no longer makes the remedy of set-off mandatory, but instead provides that set-off is an equitable action left to the discretion of the trial court. Generally, to warrant the set-off of claims in equitable actions, there must be mutuality and subsisting claims between the same parties, *802 due in the same capacity or right. 21 West, Inc. v. Meadowgreen Trails, Inc., 913 S.W.2d 858, 869 (Mo.App.1995); Gibson v. Harl, 857 S.W.2d 260, 270 (Mo.App.1993). The only exception to the mutuality of parties requirement is that where a set-off serves only to discharge a judgment against a non-mutual party, and therefore works that party no prejudice, the set-off is permissible. 21 West, at 869.
In the present case, there is mutuality of parties and claims between Hillside and Continental Carlisle; however, there is no mutuality of claims or parties between Walsh and Continental Carlisle. Furthermore, a set-off of Continental Carlisle's claim would not discharge a judgment against Walsh, therefore, he would be prejudiced by such a set-off.
The courts have liberally construed the attorney's lien statute(s) in order to afford attorneys protection in enforcing their liens. Ganaway v. Department of Social Services, 753 S.W.2d 12, 14 (Mo.App.1988); Downs v. Hodge, 413 S.W.2d 519, 523 (Mo. App.1967). The Missouri attorney's lien statute(s) are remedial in nature because they "simply provide a remedy by which one who performs valuable services for another may have compensation for his work out of that which it has contributed to produce." Ganaway, at 14 citing Abbott v. Marion Mining Co., 255 Mo. 378, 164 S.W. 563, 564 (1914).
It is this Court's determination that a set-off, under the circumstances of this case, would be prejudicial to movant Walsh and contrary to the remedial purpose of Missouri's attorney's fee lien statute(s). Consequently, movant Walsh's attorney's fee lien shall take priority over any set-off of Continental Carlisle's judgment against Hillside's judgment.
However, this still leaves open the issue of the amount of the lien to be enforced. Walsh contends that he is entitled to enforce his lien under the provisions of the "amended" contingency fee arrangement he and Hillside entered into after the judgments were entered in this case. The original fee arrangement called for Walsh to have a lien of one-third of all sums recovered; the amended fee arrangement calls for Walsh to have a lien of one-half of all sums recovered.
The Court has carefully considered this matter in light of all of the circumstances surrounding this litigation, including the fact that Hillside had (at least) one outstanding consent judgment against it pending at the time Walsh and Hillside amended their contingency fee arrangement. Furthermore, the Court notes that although Walsh gave notice to Continental Carlisle of the new fee arrangement, as technically required under § 484.140, such notice was almost two (2) years after the fact, and after the judgments had been rendered in this case. The Court finds such notice was untimely and prejudicial to the right of an equitable set-off of Continental Carlisle's judgment. Furthermore, the Court finds the amended fee arrangement to be highly suspect in light of the fact that Walsh and Hillside knew of Hillside's pending outstanding debt to Houston Distributing (and perhaps other judgment creditors) at the time they entered into the amended contingency fee contract. Thus, the Court holds that the fair and equitable answer is to permit Walsh to assert his lien only pursuant to the terms of his original contingency fee contract; i.e. Walsh's lien shall only be for one-third of the sums recovered by Hillside.
In conclusion, the Court holds that 1) Houston Distributing Co. shall not be allowed to intervene in this action in order to obtain satisfaction of its judgment against Hillside prior to the satisfaction of any lien for attorney's fees asserted by Hillside's counsel; 2) Hillside's counsel's lien for attorney's fee shall have priority over any set-off of defendant Continental Carlisle's judgment against plaintiff Hillside's judgment; and 3) Hillside's counsel's lien shall only be asserted in accordance with the terms of the original contingency fee contract entered into between John A. Walsh and Hillside; i.e. said lien shall only be for one-third of the sums recovered by Hillside prior to any set-off.
NOTES
[1] In its brief, Houston incorrectly cites the chronology of the post-trial events in the underlying lawsuit. The cross-appeals in this case were filed on May 13, 1994, not 1995. As the letter of July 8, 1994 indicates, the case was already on appeal to the Eighth Circuit Court of Appeals as of the date of the letter.
[2] Currently, the above-cited quotation can be found in 7C, Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Civil, § 1916, pgs. 444-45 (1986).
[3] Continental Carlisle also cites to Rule 13(c) Fed.R.Civ.P. in support of its contention that its counterclaim judgment takes priority over Walsh's attorney's fee lien. Since the determination of the issue of priority depends upon Missouri substantive law, the Court does not believe that Rule 13(c) is applicable to the issue at hand. However, it really doesn't matter because Missouri's counterclaim statute § 509.430 R.S.Mo. and Rule 13(c) are identical.
[4] In support of its contention that Rule 13(c) Fed.R.Civ.P. makes set-off mandatory, defendant cites the case of Total Petroleum v. Davis, 788 F.2d 476 (8th Cir.1986). The Court finds this case not applicable to the present situation. Firstly, Rule 13(c) clearly does not make set-off mandatory. Secondly, the Total Petroleum case did not involve the issue of attorney's fee lien v. set-off. Finally, all the Eighth Circuit stated, in a footnote, was that any recovery by plaintiff Total Petroleum on the debt owning plaintiff must be deducted from the defendant's recovery so that a single judgment may be entered. Total Petroleum, at 484, n. 7. This does not mean that a setoff of the claims takes priority over enforcement of an attorney's fee lien. In fact, the Eighth Circuit's finding would still be honored even if this Court were to give Walsh's lien priority because after enforcing the lien, then applying the set-off between defendant's judgment and the remainder of plaintiff's judgment, a single judgment may still be entered.