The KANSAS CITY SOUTHERN RAIL-
WAY COMPANY, Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, Respondent.

No. 57511.

Supreme Court of Missouri,
Division No. 1.

May 13, 1974.

Motion for Rehearing or to Transfer to
Court en Banc Denied June 10, 1974.

Robert D. Youle, Daniel M. Dibble, Kansas City, for appellant The Kansas City Southern Railway Co., Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, of counsel.

Thomas E. Deacy, Jr., Spencer J. Brown, Deacy & Deacy, Kansas City, for respondent, St. Louis-San Francisco Railway Co.

HIGGINS, Commissioner.

Appeal (taken prior to January 1, 1972) from judgment for defendant and against plaintiff on plaintiff's petition for $155,077.60 damages.

Plaintiff's southbound freight train and defendant's eastbound switch engine collided at a crossing and intersection of rail tracks of the two railways at the "South Frisco Crossing" in Joplin, Missouri, February 12, 1965. Plaintiff sustained damages of $155,077.60, for which it brought this suit alleging both primary and humanitarian negligence against defendant. Defendant's answer alleged plaintiff's contributory negligence and a defense of contract. Defendant also counterclaimed for damages of $10,000. Plaintiff replied in denial

of the contract defense and alleged defendant's contributory negligence.

On December 14, 1888, the parties' predecessors, the St. Louis and San Francisco Railroad Company and the Kansas City, Fort Smith & Southern Railway Company, entered into an Agreement whereby the Frisco gave Southern the right to operate over, upon, and across Frisco's right of way, roadbed, and tracks (the "South Frisco Crossing") at Joplin, Missouri, in consideration of which Southern agreed to construct and maintain, at its expense, a good and sufficient crossing at the point of intersection.

On May 6, 1960, Frisco and Southern entered into a Supplemental Agreement, supplementing the original Agreement and several intervening agreements, "covering installation of crossing gates at Pittsburg, Kansas, and installation of crossing gate and automatic interlocking plant at Joplin, Missouri." It was provided that "This supplemental agreement shall take effect as of July 7, 1959, and shall continue in effect so long as said gates and interlocking plant are maintained * * *."

Article I provides that Southern shall, at its own expense, install and maintain four crossing gates, three at crossings in Pittsburg, Kansas, and one at a crossing in Joplin, Missouri. "The normal position of said crossing gate[s] shall be across the track of Frisco, and when so positioned shall be authority for * * * Southern to move over said crossing without stopping. * * * Frisco, upon approaching said crossing, shall be brought to a full stop and kept at a safe and lawful distance therefrom until * * * Frisco shall have determined that * * * Frisco may be properly and safely moved over said crossing, and shall cause said gate to be placed or set across the track of Southern, whereupon * * * Frisco may be moved over said crossing; and immediately after * * * [Frisco] shall have cleared the crossing * * * Frisco shall restore the crossing gate to its normal position across the track of Frisco."

Article II, "as a further consideration for the privilege extended to Southern" by Article I, provides that "Frisco may, at the sole cost and expense of Southern, furnish and install an interlocking plant at the ["South Frisco Crossing"] at Joplin, * * * subject, however, to mutual agreement * * * as to when the work shall be performed within four (4) years from the date hereof; it being further understood and agreed that in the event Frisco is unable for any reason to install said automatic interlocking plant within said four (4) year period * * * or if a mutual agreement as to the date of installation * * * shall not be reached * * * during the said four (4) year period, Frisco shall have the right, at Southern's cost and expense, to furnish and install said automatic interlocking plant * * * at any time Frisco may desire to do so after the expiration of said four (4) year period."

The crossing gates at Pittsburg were installed and placed in operation by Southern July 7, 1959, and have been in operation since. The automatic interlocking plant at "the South Frisco Crossing" has not been installed.

Article III provides that the supplemental agreement pertains to "all loss or damage arising upon or adjacent to said crossings, or either of them." Loss or damage due to the concurring negligence or wrongful acts or omissions of the sole employee or employees of the parties "shall be borne by each party" as to its own property.

The parties stipulated that the Supplemental Agreement "if applicable to the collision occurring at the ["South Frisco"] crossing * * * shall be construed so as to preclude either party hereto submitting its claim against the other under the Missouri Humanitarian Doctrine and instead requires that if either party recovers against the other it must be on the basis of the other's primary negligence and such party so recovering must be free from contributory negligence. Plaintiff * * *

contends that said contract is not applicable to the collision * * * and defendant * * * contends that it is. * * * that the applicability of the contract is a question of law for determination by the Court."

By supplementary stipulation, the parties agreed that both plaintiff and defendant were guilty of contributory negligence as a matter of law, precluding recovery by either; and that if the court should find the Supplemental Agreement not applicable, plaintiff would submit on the humanitarian doctrine only.

The court determined that the Supplemental Agreement was in full force and effect and applicable to the collision in question; that Article III was controlling as to the legal rights of the parties; that it precluded plaintiff from submitting its humanitarian case; and that the parties were precluded from submitting their primary negligence claims by their stipulated contributory negligence as a matter of law.

Accordingly, the court adjudged that defendant have judgment against plaintiff on plaintiff's petition; and, upon defendant's voluntary dismissal of its counterclaim, adjudged that it be dismissed without prejudice.

The sole question is whether the Supplemental Agreement in evidence was applicable and controlling as to the legal rights of the parties at the South Frisco Crossing in Joplin at which the collision occurred on February 12, 1965. If it was applicable, as found by the trial court, the judgment of dismissal shall be affirmed; if it was not applicable, the judgment shall be reversed to permit plaintiff to submit its humanitarian case.

Appellant contends the agreement is not applicable because the contract is divisible and the applicability of Article III to this crossing at the time of collision is subject to a condition precedent which has never been met, namely, installation of the interlocking plant at the South Frisco Crossing.

Appellant refers to the tests of a divisible contract in Swinney v. Continental Bldg. Co., 340 Mo. 611, 102 S.W.2d 111 (1937), and Rexite Casting Co. v. Midwest Mower Co., 267 S.W.2d 327, 331–332 (Mo.App. 1954): "Whether a contract is entire or severable is a question of intention, to be gathered from the language used and the subject-matter of the agreement. Tests which have been applied are whether the subject-matter of the contract is divisible, whether the consideration is entire or apportioned, whether the obligation is due at the same time to the same person, whether the contract is to take the whole or none, and whether the parties assented to all the promises as a single whole so that there would be no bargain whatever if any promise or set of promises were stricken out." Appellant refers to the general nature of conditions precedent in Globe American Corp. v. Miller Hatcheries, 110 S.W.2d 393, 396 (Mo.App.1937): " 'It seems to be agreed that in regard to all conditions whether in a deed or will or in simple contracts, when the condition is in the nature of a consideration for the concession, its performance will be regarded as intended to precede the vesting of any right, and so a condition precedent. A condition precedent implies an existing fact, or a state of facts, which must be so changed as to bring it into a condition desired. A condition which involves anything in the nature of consideration is, in general, a condition precedent.' "

Proceeding from these quoted principles, appellant argues that the Supplemental Agreement was a severable contract in that Article I dealt with crossing gates and called for immediate performance, while Article II dealt with an interlocking plant at a different location with performance left to the indefinite future. Similarly, in appellant's view, Article III, changing legal rights between the parties from what they would otherwise be under Missouri law from time to time, applied to the locations of track crossings only at the respective time for performance applicable under Ar-

ticle I and for Article II. The condition precedent for application of the limitation of plaintiff's rights by Article III, as to this collision, was the accomplished installation of the interlocking plant.

■ There are two difficulties in this position: the elements of divisibility present in some contracts, e. g., the contract in Swinney v. Continental Bldg. Co., supra, are not present here; and the law does not favor conditions precedent and courts will not construe contract provisions to be such unless required to do so by plain, unambiguous language or by necessary implication, Miran Investment Co. v. Medical West Building Corp., 414 S.W.2d 297 (Mo.1967); 17 Am.Jur.2d Contracts § 321, p. 752.

"A contract or a deed must be construed as nearly as may be by the intention of the parties, to be ascertained within the four corners of the instrument, the surrounding circumstances and conditions. Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262. Consideration must be given to what the deed or contract actually says and not what the grantor intended secretly or without stating or what he might have said if he had decided to further explain his intention." Kerrick v. Schoenberg, 328 S.W.2d 595, 599 (Mo.1959).

The Supplemental Agreement between Frisco and Southern supplements the earlier contract between the parties dated December 14, 1888. The older Agreement contained no provisions with respect to loss and damage at the crossing in question at Joplin, Missouri. It simply was a grant from Frisco to Southern whereby Southern obtained the right to operate its trains over Frisco's Joplin crossing.

The Supplemental Agreement elaborates on the rights and privileges of the parties to provide, among other things, the legal positions of the parties at the South Frisco Crossing in Joplin, mentioned in the older Agreement, and four other crossings as well. See prior quotations from Article III, Supplemental Agreement.

The "loss or damage" mentioned in and governed by Article III referred to "said crossings," and could refer only, and to all the crossings described in Articles I and II, i. e., the crossing in question and the four gate crossings. See prior quotations from Articles I and II, Supplemental Agreement.

Nowhere does the Supplemental Agreement provide that the effect of any of Article III would be deferred until a future time or until a particular occurrence or incident, and the agreement is lacking any provision that Article III or any part of the Agreement was to be ineffective until the interlocking plant at the South Frisco Crossing in Joplin had been constructed. Had such been the intention of the parties, it would have been a simple matter to so state.

■ It is clear from the language employed and the sequence of provisions in the Supplemental Agreement, that the provisions governing rights and liabilities of the parties respecting damage to their property caused by their separate and concurring negligence were engrafted on the prior and existing agreements. The Supplemental Agreement shows on its face reference to the prior crossing provisions at Pittsburg and Joplin, and it recites the prior and existing agreements. If any of the crossings were to be omitted from any of the provisions of the Supplemental Agreement, this, too, would have been a simple matter to express.

Glove American Corp. v. Miller Hatcheries, supra, also noted that although it is not always necessary to introduce conditions precedent by such terms as "on condition," "provided that," "so that," conditions are usually accompanied by such words unless the contract is of such nature as to show that it was the intention of the parties to provide for such a condition. Neither the "magic" words nor the nature of the contract compels a construction including a condition precedent of the Sup-

plemental Agreement between Frisco and Southern.

Appellant's argument that the effect of Article III was to be deferred until installation of the interlocking plant also disregards the parties' express provision that the Supplemental Agreement, even though finally executed May 5, 1960, took effect on July 7, 1959, the date the crossing gates mentioned in Article I were placed in operation. The date is significant to the total effectiveness of the Supplemental Agreement. It marks the start of the flow of consideration supporting the contract to the Southern from the Frisco, i. e., from that date Southern's main-line trains could thenceforth move over and through Frisco's crossings without stopping. It is true, as suggested by appellant, that safety of operation over these crossings was increased by reason of the gates. However, as also stated by appellant, "It is apparent that the gates were in favor of the Kansas City Southern and against the Frisco because the tracks were the mainline of the former and a switchline of the latter." Again, if it was intended that effectiveness of any part of the Supplemental Agreement was to be deferred until a later date, it would have been a simple matter to exempt that part from the effective date of the total agreement or to specify a date for effectiveness of that part.

The indivisibility of the contract is further shown by the provision for further consideration flowing from installation of the locking gate. See prior quotation from Article II, Supplemental Agreement. Such provision shows that the privilege granted Southern to install crossing gates against Frisco was further considered by the right recognized in Frisco to install the interlocking plant at Southern's cost. Frisco's election to date not to exercise its right with respect to the interlocking plant does not constitute a waiver or serve to defeat any of the express provisions of Article III governing rights and liabilities of the parties in connection with subject collision.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the judges concur.