JAMES E. BRADY & COMPANY,
INCORPORATED, a Missouri
corporation, Appellant,

v.

Rex ENO, an individual and resident of
Iowa; Aegon U.S.A. (Life Investors,
Inc.), an Iowa corporation, Defendants,

Pacific Fidelity Life Insurance Company,
a California corporation, Appellee,

Donald J. Shepard, an individual and a
resident of Iowa; David Soelter, an indi-
vidual and a resident of Texas, Defen-
dants,

James E. Brady, Jr., Appellant.

JAMES E. BRADY & COMPANY,
INCORPORATED, a Missouri
corporation, Appellee,

v.

Rex ENO, an individual and resident of
Iowa; Aegon U.S.A. (Life Investors,
Inc.), an Iowa corporation, Defendants,

Pacific Fidelity Life Insurance Company,
a California corporation, Appellant,

Donald J. Shepard, an individual and a
resident of Iowa; David Soelter, an indi-
vidual and a resident of Texas, Defen-
dants,

James E. Brady, Jr., Appellee.

Nos. 92–2198, 92–2354.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1993.

Decided May 12, 1993.

Dennis J.C. Owens, Kansas City, MO, for appellant.

James Borthwick, Kansas City, MO, argued (Toni H. Blackwood, on the brief), for appellee.

Before McMILLIAN, MAGILL and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

This diversity case involves an unsuccessful business relationship which has resulted in claims and counterclaims, appeals and cross-appeals. James E. Brady & Company, Inc., (JEBCO) and Pacific Fidelity Life Insurance Company (PFL) entered into a cooperative business arrangement to market life

insurance products. Both contend that the other violated the agreement. A jury found that JEBCO had breached the contract and awarded PFL $1.9 million.[1] The jury also found that a PFL employee had breached his fiduciary duty to JEBCO while he was temporarily serving as JEBCO's chief executive officer. We affirm on all issues.[2]

## I.

JEBCO, led by its founder James E. Brady, Jr. (Brady), was in the business of developing innovative new insurance products. JEBCO's principle product combined universal life policies with group insurance and came to be known as "GULP," an acronym for group universal life plan. By 1987, JEBCO had developed computer software, in cooperation with an actuary firm called Tillinghast, Nelson (Tillinghast), to be used in connection with marketing GULP. JEBCO held the rights to use the software in connection with its marketing efforts. JEBCO was not an insurance carrier, however, and could not issue policies. Therefore, in 1988, JEBCO entered into an agreement with PFL whereby PFL agreed to underwrite the GULP products for JEBCO.

Brady, on behalf of JEBCO, and PFL vice president David Soelter signed a letter of understanding on March 17, 1988, memorializing the deal. The agreement stated that PFL and JEBCO would act together as the carrier and exclusive agent for the purpose of underwriting, marketing, and administering the GULP products. JEBCO's principal duty was to sell GULP products through a variety of different marketing approaches. The agreement stated that the primary sales effort, direct sales, "should result in 500 applications per month by the end of the first twelve months of operation." JEBCO also agreed to utilize its computer programs in its marketing efforts and to "devote its best efforts in good faith" to marketing the GULP products as its primary initial business.

JEBCO further promised to devote all its sales efforts and related marketing expenses solely to PFL once the agreement became effective. PFL agreed to provide JEBCO with a "line of credit" of up to $350,000 to be drawn monthly over a six-month period, or "if earlier, until JEBCO's financing need ceases." The agreement states: "JEBCO's debt to PFL shall be repaid by the amount by which gross income from whatever source exceeds all of JEBCO's expenses in any month." PFL agreed to draft a contract outlining the terms of the letter of understanding, but the letter stated that acceptance of the letter by both parties meant that JEBCO could proceed with the arrangement.[3]

By the summer of 1988, JEBCO had been unable to sell any GULP policies and nearly all of the initial $350,000 was exhausted. In July 1988, PFL agreed to advance JEBCO an additional $100,000. In August of that year, PFL agreed to continue advancing JEBCO further funds. Moreover, in September of 1988, PFL agreed to pay JEBCO's preexisting debt to Tillinghast at the rate of $10,000 per month. There was no agreement as to how long PFL would continue servicing JEBCO's debt to Tillinghast. During late 1988 and early 1989, JEBCO's sales efforts continued to produce disappointing results, and the company was losing money at the rate of approximately $60,000 to $80,000 per month.

By March 1989, PFL had advanced over $1.2 million to JEBCO and had incurred over $200,000 in additional direct expenses by virtue of the relationship. In its first year, JEBCO had sold fewer than 100 individual certificates, generating only $40,000 in annualized premiums. In light of this situation, PFL proposed a change in its arrangement with JEBCO. Brady and Soelter met and executed an addition to their original letter of understanding. Pursuant to this supplemental agreement, Soelter was appointed ex-

---

1. A jury trial was conducted before the Honorable John T. Maughmer, Chief Magistrate Judge for the United States District Court for the Western District of Missouri.

2. We also deny JEBCO's motion to strike the supplemental appendix.

3. Testimony at trial indicated that PFL did forward a proposed contract to Brady but he did not execute and return the document.

ecutive vice president and chief executive officer of JEBCO for a period of ninety days. PFL agreed to advance JEBCO funds to meet its April 1989 payroll and the agreement set monthly revenue production goals and contemplated monthly review of the arrangement. The agreement stated that if the production goals were not achieved by the end of June 1989, "all financing by PFL will terminate," and "[f]uture relationships between JEBCO and PFL will be determined at that time...."

During the month of June 1989, Soelter and Brady individually attempted to work out an arrangement for PFL and JEBCO's continued association. They were unsuccessful. On June 30, 1989, Brady met with Soelter and other members of PFL's management in a final effort to reach a new agreement. According to Brady, the June 30 meeting ended without a resolution. According to PFL, Brady had agreed in principle to the terms of a future PFL–JEBCO relationship which was to be outlined in a formal agreement by August 7, 1989. Based on its interpretation of the meeting, PFL agreed to continue funding JEBCO through July. According to PFL, in the middle of July, after receiving the latest PFL advances, Brady rejected the terms of the June 30 accord and proposed new, unacceptable terms to PFL. The relationship terminated on August 7, 1989. It is undisputed that neither JEBCO nor PFL earned any profits from their arrangement.

JEBCO sued PFL. In its complaint, JEBCO alleged that PFL was liable for breach of contract and for David Soelter's breach of fiduciary duties to JEBCO. JEBCO additionally sought punitive damages against PFL because of Soelter's breach of fiduciary duty. PFL counterclaimed against JEBCO for breach of contract. After a ten-day jury trial, the magistrate judge granted a motion for judgment as a matter of law in favor of PFL on JEBCO's claim for punitive damages. The jury returned the following verdicts: (1) judgment in favor of PFL for $1,962,760 on the breach of contract issue; and (2) an award of $450,000 in favor of JEBCO on JEBCO's claim of Soelter's breach of fiduciary duty.

Although JEBCO disputes this, PFL maintains that it proposed to the trial court an instruction explaining to the jury that it could set off the awards if it found for PFL on the counterclaim but for JEBCO on its primary claims. The court decided not to issue such an instruction. After trial, JEBCO made a motion for a new trial and renewed a motion for judgment as a matter of law. The district court denied both motions.

Apparently through inadvertence, the district court clerk did not timely enter final judgment upon the jury verdicts. Some nine months after the trial, on March 16, 1992, PFL moved pursuant to Fed.R.Civ.P. 60(a) for entry of judgment on the jury's verdicts. By this time, JEBCO's counsel had sought an attorney's lien under Missouri state law on JEBCO's $450,000 breach of fiduciary duty award. In its motion for entry of judgment, PFL requested the court to enter a net award in its favor for the amount of $1,512,-760 in order to avoid the attorney's lien. On the same day PFL made its motion, the clerk of court issued a judgment reflecting the jury awards exactly as returned, i.e., without calculating the setoff. Shortly thereafter, PFL sought a modification of the March 16 order, and renewed its request for a net judgment. On April 24, 1992, the magistrate judge granted PFL's motion to modify the judgment and ordered that the clerk of court's office vacate its March 16 order and enter a judgment in favor of PFL for the net amount.

Both JEBCO and PFL appeal. PFL argues that the trial court erred in submitting the breach of fiduciary duty claim to the jury and improperly instructed the jury regarding it. JEBCO advances three arguments: (1) the issue of punitive damages for Soelter's breach of fiduciary duty should have been submitted to the jury; (2) there was insufficient evidence to support the breach of contract verdict in favor of PFL on its counterclaim; and (3) the trial court's entry of judgment reflecting a setoff was inappropriate because the jury did not enter the verdicts in such a manner and because setoff between a contract claim and a tort claim is barred by Missouri law.

## II.

### A. Breach of Fiduciary Duty

■ PFL first argues in its cross-appeal that the issue of breach of fiduciary duty should never have been submitted to the jury. Although PFL made a motion for judgment as a matter of law at trial, it did not make a renewed motion for judgment as a matter of law after the verdict. In this situation, our review is strictly limited. *Shell v. Missouri Pac. R.R.*, 684 F.2d 537, 540 (8th Cir.1982). "We cannot test the sufficiency of the evidence to support the jury's verdict beyond application of the 'plain error' doctrine in order to prevent a manifest miscarriage of justice." *Karjala v. Johns–Manville Prods. Corp.*, 523 F.2d 155, 157 (8th Cir. 1975). Based on our review, we conclude there was evidence upon which a jury could find a breach of fiduciary duty and therefore it was not plain error for the trial court to submit this issue.

■ PFL next argues that the court improperly instructed the jury on the issue of Soelter's breach of fiduciary duty. The trial court has wide discretion in choosing the form and language of the jury instructions. *Grogan v. Garner*, 806 F.2d 829, 836 (8th Cir.1986). The jury charge, taken as a whole and in light of the evidence at trial and applicable law, must fairly and adequately submit the issues in the case to the jury. *Jones v. Board of Police Comm'rs*, 844 F.2d 500, 504 (8th Cir.1988), *cert. denied*, 490 U.S. 1092, 109 S.Ct. 2434, 104 L.Ed.2d 990 (1989). " 'The test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.' " *Westborough Mall, Inc. v. City of Cape Girardeau*, 794 F.2d 330, 335 (8th Cir.1986) (quoting *Houston v. Herring*, 562 F.2d 347, 349 (5th Cir. 1977) (per curiam) (citations omitted)), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 688 (1987).

■ The jury instructions were adequate in this case. Instruction Twelve provided that if the jury found that David Soelter had personally caused any of four enumerated events to occur,[4] while simultaneously acting as vice president of PFL and chief executive officer of JEBCO, and he did this by "failing to act in good faith toward JEBCO," he must be held liable for breach of an officer's fiduciary duty. The listing of the four events was entirely justified given the factual evidence presented at trial.

■ Furthermore, though less than ideal, Instructions Twelve and Fourteen, which broadly defined a fiduciary's duty as "the duty to act in good faith as to another's interest," were fair and adequate expressions of the prevailing Missouri law as it pertained to this case. Soelter was alleged to have violated fiduciary duties to JEBCO during his simultaneous employment by PFL. Maintaining a dual role in both entities involved in a cooperative business relationship is not a per se breach of fiduciary duties in Missouri. *See Linwood State Bank v. Lientz*, 413 S.W.2d 248 (Mo.1967). However, the Missouri Supreme Court, in discussing fiduciary duties, has stated that when "a common director or officer is dominating in influence or in character" between two companies engaged in a business relationship, it is especially true that transactions must be "fair, open and in the utmost good faith." *Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425, 432 (Mo.1968). Soelter served dominant roles in both JEBCO and PFL simultaneously. Given the trial court's broad discretion in framing the specific language of the jury charge, we hold that the fiduciary duty instructions adequately and fairly submitted the issue to the jury.

### B. Punitive Damages

■ JEBCO contends that the issue of punitive damages on Soelter's breach of fiduciary duty should have been submitted to the jury. JEBCO argues that the district court used the wrong standard for malice by rely-

4. The four enumerated events were: (1) causing PFL to stop financing JEBCO; (2) causing PFL to refuse to pay JEBCO's debt to Tillinghast; (3) causing PFL to fail to approve pricing of insur- ance proposals submitted to JEBCO; and (4) causing JEBCO to cease obtaining licensing of new insurance agents.

ing on *Nika Corp. v. City of Kansas City, Mo.,* 582 F.Supp. 343 (W.D.Mo.1983), and *Vanskike v. ACF Indus., Inc.,* 665 F.2d 188 (8th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). JEBCO urges that the correct malice standard is found in *Burnett v. Griffith,* 769 S.W.2d 780 (Mo.1989) (en banc). We agree with the trial court's language in its order denying JEBCO's motion for a new trial that the evidence presented was "wholly inadequate to support an inference of malice or an award of punitive damages." This statement is still true under the *Burnett* standard advocated by JEBCO.

### C. Breach of Contract

JEBCO submits that the trial court should have granted JEBCO's motion for judgment as a matter of law on PFL's counterclaim regarding the breach of contract issue or, alternatively, that there was insufficient evidence to support the award to PFL.

 In reviewing the submissibility of an issue, we must resolve all factual conflicts in favor of the non-moving party, assume as true all facts in its favor which the evidence tends to prove, and give it the benefit of all reasonable inferences. *See Robertson Oil Co. v. Phillips Petroleum Co.,* 871 F.2d 1368, 1371 (8th Cir.1989); *Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1218 (8th Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). Our review of a denial of a motion for judgment as a matter of law is severely limited, and we may not substitute our view of the facts in place of the jury's unless a reasonable jury could only have found otherwise. *See McIntyre v. Everest & Jennings, Inc.,* 575 F.2d 155, 158 (8th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978); *Russ v. Ratliff,* 538 F.2d 799, 804 (8th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977). Given this standard, the trial court was clearly correct in denying JEBCO's motions for judgment as a matter of law.

 JEBCO argues further that the evidence did not support the jury's verdict in favor of PFL on the breach of contract counterclaim. Where the jury's verdict is reasonable and supported by more than a mere

scintilla of evidence, this court must uphold that verdict. *Wilmington v. J.I. Case Co.,* 793 F.2d 909, 914 (8th Cir.1986). JEBCO contends that the only way the jury's verdict makes sense is to assume that the jury found JEBCO in breach because of the non-payment of its debt to PFL. JEBCO then argues that it could not have breached for failure to pay the debt because the debt never became due. This is so, according to JEBCO, because of the language in the letter of understanding which states: "JEBCO's debt to PFL shall be repaid by the amount by which gross income from whatever source exceeds all of JEBCO's expenses in any month." As there was never any monthly excess of gross income over expenses, JEBCO maintains that the debt never became due.

 We reject JEBCO's argument that this is the only proper interpretation of the jury's verdict and we also reject JEBCO's contention that the debt never became due. For us to accept JEBCO's argument that the debt never became due, we must accept that JEBCO's earning a monthly profit was a condition precedent to the agreement to repay the debt. Missouri law clearly does not favor conditions precedent. *See, e.g., Kansas City S. Ry. v. St. Louis–San Francisco Ry.,* 509 S.W.2d 457, 460 (Mo. 1974); *Hastings & Chivetta Architects v. Burch,* 794 S.W.2d 294, 296 (Mo.Ct.App. 1990); *Dockery v. Mannisi,* 636 S.W.2d 372, 378 (Mo.Ct.App.1982); *Juengel Constr. Co. v. Mt. Etna, Inc.,* 622 S.W.2d 510, 513 (Mo.Ct. App.1981). Courts should not construe contract provisions to be conditions precedent "unless required to do so by plain, unambiguous language or by necessary implication." *Kansas City S. Ry.,* 509 S.W.2d at 460. Although it is not always the case, conditions precedent are usually introduced by conditional language such as "provided that" or "on condition." *Id.*

 We do not find the language in the contract so clear and unambiguous as to require us to find a condition precedent. Nowhere does the contract expressly condition repayment of the debt. Furthermore, an alternative construction of the repayment

language is clearly reasonable as shown by two Missouri cases. In *Miran Inv. Co. v. Medical W. Bldg. Corp.*, 414 S.W.2d 297, 304 (Mo.1967), the Missouri Supreme Court held that a very similar contract provision did not constitute a condition precedent but was more likely a reference to the method and manner of payment. In *Neidert v. Neidert*, 637 S.W.2d 296, 302 (Mo.Ct.App.1982), the court construed a contract provision stating that loans should be repaid "if and when sufficient monies become available in the corporation to permit payment without jeopardizing other activities of the corporation." The court refused to find a condition precedent, and held instead that " '[i]n such circumstances the cases are to the effect that payment is to be made within a reasonable time.' " *Id.* (quoting *C.J. Hogan, Inc. v. Atlantic Corp.*, 332 Mass. 322, 124 N.E.2d 905, 909 (1955), and citing *Miran*, 414 S.W.2d 297). Based on the contractual language and the Missouri case law, we find that no condition precedent was intended.

 Moreover, the breach of contract judgment must not necessarily be interpreted to mean that the jury found a breach by non-payment of the debt, as JEBCO maintains. The letter of understanding contained other terms which PFL alleged JEBCO breached. In support of its counterclaim, PFL introduced substantial evidence to show that JEBCO had not used its best efforts to market the GULP products and had failed to devote all its sales efforts and related marketing expenses solely to PFL, in addition to failing to pay its debt to PFL. There was ample evidence at trial to support the jury's verdict on the counterclaim.

### D. Setoff Issue

JEBCO argues that the trial court's posttrial entry of a judgment incorporating a setoff was inappropriate because the jury did not enter the judgment in a net amount and because Missouri law forbids setting off contract awards with tort awards.

We find no merit in either of JEBCO's contentions. PFL did offer a setoff instruction but the trial court rejected it. The verdict forms used by the trial court made the jury's calculation of a setoff impractical. However, PFL made the appropriate motions after trial to modify the judgment to reflect a setoff, and the trial court was well within its discretion to grant them. *See* Fed. R.Civ.P. 60. JEBCO relies on *Caldwell v. Ryan*, 210 Mo. 17, 108 S.W. 533 (1908), for the proposition that Missouri law forbids the setoff of contract and tort damages. As the district court pointed out in its order to modify judgment, *Caldwell* is not only distinguishable on its facts, but the *Caldwell* court also relied on a Missouri setoff statute since repealed. The entry of one final net judgment in a situation such as this is the usual practice and is well supported by Missouri case law. *See MFA Coop. Ass'n of Ash Grove v. Elliot*, 479 S.W.2d 129, 133 (Mo.Ct. App.1972); *Edmonds v. Stratton*, 457 S.W.2d 228, 232 (Mo.Ct.App.1970); *Rehm v. Fishman*, 395 S.W.2d 251, 255 (Mo.Ct.App.1965). *See also Total Petroleum, Inc. v. Davis*, 788 F.2d 476, 484 n. 7 (8th Cir.1986). Furthermore, JEBCO's counsel's attorney lien against JEBCO's $450,000 judgment is inferior to PFL's right to obtain a final judgment for the net amount. *See Benton v. Alcazar Hotel Co.*, 194 S.W.2d 20, 25 (Mo.1946) (attorney lien attaches to award in favor of client but is subsequent and subservient to right of opponent to set off its award where claims all arose out of the same transaction).

### III.

For the foregoing reasons, the jury verdicts and decisions of the district court are affirmed.