### In re UNION FINANCIAL SERVICES GROUP, INC., et al., Debtors.

#### No. 03–45870–399.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Aug. 6, 2004.

Eric R. Fencl, Chesterfield, MO, Evan R. Gartenlaub, Kirkland and Ellis, Chicago, IL Gregory D. Willard, Bryan Cave, St. Louis, MO Janet S. Baer, Kirkland and Ellis, Chicago, IL, Jennifer A. Merlo, Spencer Fane Britt & Browne LLP, St. Louis, MO, Ryan S. Nadick, Sven T. Nylen, Kirkland and Ellis, Chicago, IL, for Debtor.

Leonora S. Long, Office of U.S. Trustee, St. Louis, MO, for U.S. Trustee.

Steven N. Cousins, Armstrong, Teasdale et al., St. Louis, MO, Adam H. Friedman, Traub Bonacquist and Fox New York, NY, David L. Going, Armstrong, Teasdale et al., St. Louis, MO, Fredrick J. Levy, Traub, Bonacquist et al., Jack A. Hazan Kramer, Levin, Naftalis et al., New York, NY, John Talbot Sant, Jr., Armstrong, Teasdale et al., St. Louis, MO, Michael S. Fox, Traub, Bonacquist et al., Mitchell A. Seider, Kramer, Levin, Naftalis et al., Paul Bradley O'Neill, Kramer, Levin, Naftalis & Frankel LLP, New York, NY, Susan K. Olsen, Armstrong Teasdale, St. Louis, MO, for Creditors.

## ORDER ALLOWING SUBORDINATED UNSECURED CLAIM OF ROBERT CURTIS AND DENYING MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

BARRY S. SCHERMER, Bankruptcy Judge.

The matters before the Court are the objections ("Objections") filed by the Reorganized Debtors to several claims filed by Robert W. Curtis ("Curtis") and the Motion for Payment of Administrative Cure Expense ("Motion") filed by Curtis. The Court conducted a hearing on the Objections and the Motion at which counsel for the Reorganized Debtors and Curtis were present. The parties entered into a stipulation and Counsel presented evidence and arguments on the issues raised in the pleadings. The Court, having reviewed the pleadings and having considered the evidence and legal arguments, makes the following findings of fact:

## FINDINGS OF FACT

1. Prior to September 29, 2000, Curtis was the president and sole shareholder of RWC Consulting Group, Inc.

2. On September 29, 2000, Outsourcing Solutions, Inc. ("OSI"); RWC Consulting Group, LLC, a subsidiary of OSI; RWC Consulting Group, Inc.; and Curtis entered into an asset purchase agreement pursuant to which RWC Consulting Group, LLC purchased the assets of RWC Consulting Group, Inc. for a package of consideration including $15,000,000 cash.

3. In conjunction with the asset purchase, OSI executed a Subordinated Promissory Note dated September 29, 2000, in the principal amount of $5,000,000 in favor of RWC Consulting Group, Inc. ("Seller Note"). The Seller Note contains the following subordination provision:

[RWC Consulting Group, Inc.] hereby subordinates and postpones this Note to any obligations of [OSI] under any note, agreement, contract of suretyship, guaranty or accommodation, claim or right of action, and any other

obligations of [OSI] however and whenever created, arising or evidenced, whether direct or indirect, through assignment from third parties, absolute, contingent, or otherwise, now or hereafter existing, or due or to become due, including all interest which accrues on any such obligations both before and after the filing by or against [OSI] of a petition under any chapter of Title 11 of the United States Code, as amended.

4. Also in conjunction with the Asset Purchase Agreement, RWC Consulting Group, LLC entered into an employment agreement dated September 29, 2000, with Curtis ("Employment Agreement") pursuant to which RWC Consulting Group, LLC agreed to employ Curtis as its president through September 30, 2003, at an annual salary of $150,000. The Employment Agreement was amended on October 1, 2002, to change Curtis' position to vice-president.

5. On May 2, 2003 ("Petition Date"), Union Financial Services Group, Inc. ("Union") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On May 12, 2003, various affiliates of Union Financial Services Group, Inc. including OSI and RWC Consulting Group, LLC filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. On May 15, 2003, this Court ordered the joint administration of the Chapter 11 cases of Union Financial Services Group, Inc. and its affiliates ("Debtors").

6. On June 23, 2003, Curtis filed three proofs of claim in the amount of $53,342.47 and two proofs of claim in the amount of $7,741,741.22. The $53,342.47 claims are identical claims filed against each of the following debtors: Union, OSI, and RWC Consulting Group, LLC. The $53,342.47 claims are each based upon the Employment Agreement. The $7,741,741.22 claims are identical claims filed against Union and OSI based upon the Seller Note.

7. On August 8, 2003, the Debtors mailed a notice of the hearing on the confirmation of Debtors' Third Amended Joint Plan of Reorganization to Curtis.

8. Curtis received and signed the Class 5A ballot in respect to the Third Amended Joint Plan of Reorganization. He did not object to confirmation of such Plan.

9. On August 14, 2003, Curtis filed an amended claim in the amount of $7,741,741.22 against RWC Consulting Group, LLC which is identical to the June 23 claim in that amount and against that debtor except for the inclusion of additional language asserting that the claim is a portion of an executory contract.

10. On August 28, 2003, the Employment Agreement was further amended to extend Curtis' employment term through December 31, 2003.

11. The Third Amended Joint Plan of Reorganization was amended at the confirmation hearing.[1] The Third Amended and Restated Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as Amended ("Plan") was confirmed by order dated October 15, 2003 ("Confirmation Order"). The Confirmation Order was not appealed and is a final order.

12. The Plan provides as follows:

---

1. The amendments increased the pot of funds available for distribution to unsecured creditors. The specific references to Curtis' claim set forth below were not changed.

a. In Section I.A.122., Seller Note is defined as the $5.0 million 18% note due September 29, 2003, with respect to the purchase of RWC Consulting Group.

b. Section II.D.5. governs the classification and treatment for General Unsecured Claims. Subsection a. states that "Class 5A shall consist of all Holders of General Unsecured Claims against the Non–Union Debtors, including, without limitation, ... Claims under the Seller Note."

c. Section II.D.5.b. provides that each holder of a Class 5A Claim shall receive that holder's pro rata share of the Unsecured Creditors Distribution Pool.

d. The Unsecured Creditors Distribution Pool is defined in Section I.A.138. as the sum of (i) $500,000 in Cash; plus (ii) 5% of the issued Newco Common Stock on a fully-diluted basis.

13. General unsecured creditors will not receive payment in full under the Plan.

14. The Plan has a default assumption provision with respect to executory contracts. Pursuant to Section VIII.A. of the Plan, all executory contracts which are not expressly rejected are deemed assumed. Pursuant to Section VIII.B., all amounts necessary to cure any defaults under an assumed contract are entitled to payment in full.

15. On November 14, 2003, the Reorganized Debtors filed objections to certain of Curtis' claims as duplicates and to others as identical claims filed against multiple debtors.

16. On December 1, 2003, the Employment Agreement was amended a third time to extend the term of Curtis' employment through December 31, 2006, to increase Curtis' annual salary to $200,000, to provide Curtis with an annual bonus, and to modify Curtis' severance package in the event of termination without cause.

17. On January 7, 2004, the Reorganized Debtors filed their objection to Curtis' claim which was based on the Seller Note.

18. On January 8, 2004, Curtis filed his responses to the objection to certain of his claims as duplicate claims and the objection to certain of his claims as identical claims against multiple debtors.

19. On February 4, 2004, Curtis filed the Motion seeking payment of amounts due under the Seller Note as an administrative expense related to the cost of curing an assumed executory contract.

20. On February 17, 2004, Curtis filed his response to the objection to his claim based upon the Seller Note.

21. The Reorganized Debtors' objections to Curtis' various claims and Curtis' Motion were consolidated for trial.

22. At trial, the parties stipulated that the $53,342.47 claims have been resolved. Additionally, the parties agreed that Curtis is entitled to a single claim against OSI based on the Seller Note ("Claim") and that the amount of the Claim is not in dispute.[2]

23. The sole issue for this Court to decide is the treatment to which the Claim is entitled under the Plan.

2. The parties agree that the amount of the claim is $5,000,000 principal plus interest and that they can calculate the exact amount of the claim which is currently in the range of $7–8 million.

## CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a), (b)(1), (b)(2)(A) and (B), and Rule 9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

3. The parties agree that Curtis is the holder of the Claim and that the Claim is valid. The parties disagree as to treatment of the Claim under the Plan.

4. The Reorganized Debtors argue that the Claim is a Class 5A General Unsecured Claim under the Plan. As such, it is entitled to treatment in that class. However, the Claim is expressly subordinated to all other claims against OSI. Therefore, Curtis is not entitled to any payment on account of the Claim until all creditors of OSI are paid in full. Other creditors will not be paid in full under the Plan. Consequently, Curtis' claim is not entitled to any distribution.

5. Curtis argues that the Claim must be paid in full as an administrative cure payment. Curtis argues that the Asset Purchase Agreement, the Employment Agreement, and the Seller Note constitute a single executory contract; that the Debtor never rejected the executory contract and therefore it is deemed assumed under the Plan; that the non-payment of the Seller Note is a default under the executory contract; that the Claim represents the cost of curing the default under the executory contract; and that the Claim must be paid in full in cash.

6. Both parties' theories agree that the Plan controls. They disagree as to how the Plan treats the Claim. The language of the Plan could not be more clear. The Claim is specifically defined in the Plan and is expressly included in Class 5A as a general unsecured claim.

7. Curtis argues that the language of Class 5A includes "lease rejection damage claims" and that the Claim was mentioned in Section II.D.5.a. as part of Class 5A only to the extent it might become a rejection claim if the Debtors rejected his executory contract. The Debtors never rejected his executory contract, so the Claim never became a rejection claim within Class 5A. This interpretation contradicts the clear language which defines the class as consisting of all unsecured claims. The language proceeds to list certain specific types of claims which fall within the class. The Claim is expressly mentioned in the list. The Plan could not have been more clear in its inclusion of the Claim in Class 5A. If Curtis disagreed with the Plan's classification of the Claim he should have objected to confirmation.[3] He chose not to do so. The Plan was confirmed and he is bound by the confirmed Plan. The Claim is therefore allowed as a Class 5A general unsecured claim.

8. The Claim is expressly subordinated to all other claims against OSI. Nothing in the Plan changes this.

---

3. Curtis' Claim was properly classified as all claims in this class are substantially similar (i.e. unsecured nonpriority). See 11 U.S.C. § 1122(a). The fact that Curtis' Claim is subordinated to other class members does not change the fact that as between Curtis and OSI the claim is unsecured nonpriority.

Therefore, according to the terms of the Seller Note, Curtis is not entitled to any payment on account of the Claim unless and until all other claims against OSI are paid in full. It is undisputed that all claims will not be paid in full. Therefore, Curtis is not entitled to any payment on account of the Claim which by its terms is subordinated.

9. This treatment of the Claim is consistent with the parties' expectations at the time of the sale of the assets of RWC Consulting Group, Inc. to RWC Consulting Group, LLC. The Seller Note was expressly subordinated to all obligations of OSI both before and after any bankruptcy petitions. The parties were aware of the possibility that OSI might not be solvent and that a future bankruptcy was possible and expressly acknowledged these possibilities in the Seller Note. Notwithstanding these possibilities, RWC Consulting Group, Inc. expressly agreed to subordinate any claims under the Seller Note to all other obligations of OSI. As time passed, OSI became insolvent and filed a bankruptcy petition and is now unable to pay its creditors in full. Curtis is getting exactly what was bargained for in the Seller Note.

10. In order for the amount due under the Seller Note to rise to the level of an administrative cure cost, the Seller Note would have to be an executory contract which was assumed by the Debtors. An executory contract is one under which the obligations of each party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other party. *Kaler v. Craig (In re Craig)*, 144 F.3d 593, 596 (8th Cir.1998); *Northwest*

*Airlines, Inc. v. Klinger (In re Knutson)*, 563 F.2d 916, 917 (8th Cir.1977). The Seller Note is not an executory contract. As of the petition date, the only remaining obligation under the Seller Note was OSI's obligation to make payment. RWC Consulting Group, Inc., the lender under the Seller Note, had performed its obligations. RWC Consulting Group, Inc.'s completion of its obligations was expressly acknowledged in the Seller Note by a reference to "value received" by OSI. There was nothing left for RWC Consulting Group, Inc. to do, much less any obligation the non-performance of which would excuse OSI's obligation to make payment under the Seller Note. Furthermore, the provision in the Seller Note authorizing OSI to offset certain amounts due under the Asset Purchase Agreement against amounts due under the Seller Note does not render the Seller Note executory. The offset provision merely potentially affects the calculation of the amount due under the Seller Note, not the underlying obligation to pay.

11. Curtis argues that the Seller Note is not a stand-alone agreement; rather, it is part of a single contract which includes the Asset Purchase Agreement and the Employment Agreement in addition to the Seller Note. This Court respectfully disagrees.

12. Missouri law governs the construction and enforcement of the Seller Note, the Asset Purchase Agreement, and the Employment Agreement, each of which contains a Missouri choice of law provision.

13. Missouri courts have addressed the issue of what constitutes an entire contract in the context of whether a single agreement is severa-

ble. The determining factor is the intention of the parties which is to be determined from the language and subject matter of the agreement. *Kansas City Southern Ry. Co. v. St. Louis–San Francisco Ry. Co.*, 509 S.W.2d 457, 459 (Mo.1974). Relevant considerations include whether the subject matter is divisible, whether the consideration is entire or apportioned, whether the obligation is due at the same time to the same person, whether the contract is to take the whole or none, and whether the parties assented to all the promises as a single whole so that there would be no bargain if any promise was stricken. *Id.* Applying these factors to the three contracts, this Court concludes that they are separate agreements.

14. The subject matter of the three contracts is divisible. One concerns the purchase of the assets of a business. Another concerns the employment of an individual. The third concerns a promise to pay money.

15. The consideration provided under each contracts differs and is distinct. The Asset Purchase Agreement requires the purchaser to pay money, issue stock, assume liabilities, and issue the Seller Note and requires the seller to deliver its assets. The Employment Agreement requires ongoing labor in exchange for ongoing salary payments. The Seller Note requires a single payment on a future date.

16. The obligations under each agreement mature at different times and are owed to different parties. For example, under the Asset Purchase Agreement, RWC Consulting Group, LLC is the purchaser, RWC Consulting Group, Inc. is the seller, and Curtis is the shareholder. OSI was obligated to issue stock and the Seller Note to RWC Consulting Group, Inc.

at the time of the agreement. Under the Employment Agreement, RWC Consulting Group, LLC was originally obligated to employ Curtis for three years. The Employment Agreement has been extended to cover a period exceeding six years and expiring in 2006. Under the Seller Note, OSI was obligated to pay RWC Consulting Group, Inc. on September 29, 2003.

17. Each contract contains an integration clause which indicates that it is the entire agreement with respect to its subject matter.

18. It is undisputed that the Employment Agreement and the Seller Note were negotiated and entered into in conjunction with the Asset Purchase Agreement and that the Asset Purchase Agreement specifically references the other two agreements and includes them as exhibits. This does not render the three agreements a single contract, however. Each document was drafted as a stand-alone agreement. For example, if RWC Consulting Group, LLC were to breach its employment contract with Curtis, OSI would still owe RWC Consulting Group, Inc. under the Seller Note. Indeed, each agreement contains a severability clause which allows the severance of any provision without affecting the enforceability of the remainder of the agreement. Clearly each agreement is enforceable on its own, without regard to the other agreements.

19. A divisible contract consists of independent agreements about different subjects made at the same time. *Amtech Lighting Servs. Co. v. Payless Cashways, Inc. (In re Payless Cashways)*, 203 F.3d 1081, 1085 (8th Cir.2000) (citing *Grease Monkey Int'l, Inc. v. Godat*, 916 S.W.2d 257,

261 (Mo.Ct.App.1995)). If performance and acceptance of one portion of the contract can occur without performance of another portion of the contract, the contract is divisible. *Payless Cashways*, 203 F.3d at 1085 (citing *Click v. Seale*, 519 S.W.2d 913, 918 (Tex.Civ.App.1975)). Here, performance can and has occurred and been accepted under the Employment Agreement without performance under the Seller Note and nonperformance under the Seller Note will not affect the Employment Agreement. Therefore, even if the promises and obligations embodied in the Asset Purchase Agreement, the Employment Agreement, and the Seller Note had been contained in a single contract rather than three separate and distinct contracts, that single contract would be divisible.

20. The Seller Note is a separate agreement. Curtis cannot bootstrap the Seller Note onto the Employment Agreement via the Asset Purchase Agreement to obtain priority status for an unsecured subordinated prepetition obligation.

21. Curtis has received the benefit of the bargain made in 2000. In fact, he has received more than the benefit of his original bargain. He has enjoyed continuous employment by RWC Consulting Group LLC since 2000, beyond the original term of employment. His duties were reduced from those of president to those of vice-president without any change in compensation. His compensation has since been increased. As assignee of RWC Consulting Group, Inc. under the Seller Note, Curtis has received what RWC Consulting Group, Inc. bargained for therein: an unsecured claim subordinated to all other obligations of OSI.

## CONCLUSION AND ORDER

Based on the foregoing findings of fact and conclusions of law, it is ordered that the Motion is **DENIED** and the Objections are **SUSTAINED**. Curtis is allowed a single general unsecured claim in the amount due under the Seller Note, the payment of which is subordinated to full payment of all other claims against OSI. To the extent the Plan does not provide for full payment of all creditors of OSI, Curtis is not entitled to any distribution on account of his allowed claim.