# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 17-3158

———————————————

CitiMortgage, Inc.

*Plaintiff - Appellant*

v.

Platinum Home Mortgage, Corp.

*Defendant - Appellee*

————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: September 26, 2018
Filed: February 6, 2019

————————

Before SMITH, Chief Judge, MELLOY and STRAS, Circuit Judges.

————————

MELLOY, Circuit Judge.

Plaintiff CitiMortgage, Inc. ("CitiMortgage" or "CMI"), a purchaser and reseller of mortgage loans, sued Defendant Platinum Home Mortgage, Corp. ("Platinum"), an originator and seller of mortgage loans. CitiMortgage alleged Platinum breached a contract by failing to repurchase seven allegedly defective loans after CitiMortgage demanded repurchase by sending multiple notices to Platinum for each loan. The district court granted summary judgment for Platinum, holding

CitiMortgage failed to satisfy a condition precedent contained in the agreement by failing to prescribe a time within which Platinum could correct or cure the alleged defects. Because we conclude CitiMortgage adequately and substantially complied with the contract (which neither specified a form of notice nor indicated that the prescription of a time for cure had to be contained within the notice), we reverse.

## I. Background

Platinum originated mortgage loans. CitiMortgage bought approximately 750 loans from Platinum for more than $140 million. This case involves seven of those loans (valued around $1 million). CitiMortgage had resold the loans at issue in this case to Fannie Mae but was forced by Fannie Mae to repurchase the loans due to Platinum's alleged failures to comply with underwriting standards.

The agreement between Platinum and CitiMortgage was a February 13, 2004 agreement supplemented with an October 14, 2004 addendum. The addendum addressed the delegation of underwriting/loan-origination authority to Platinum and was added years before loan origination for the seven loans at issue in this case. Relevant to the present case, the addendum purported to "add" terms to an existing "Section 11" of the original agreement. By the time the loans at issue in the present case were originated and sold, the underlying agreement between CitiMortgage and Platinum was one integrated agreement. Although we refer to the agreement and to the addendum when identifying specific sources of contractual terms, there is only one integrated agreement at issue in this case.

Pursuant to the agreement, CitiMortgage possessed discretion to determine if a loan under the agreement was defective. This discretion included the right to determine if Platinum had breached the standards applicable for underwriting the loans and to determine if CitiMortgage itself was required to repurchase a loan it had resold to a third party (such as Fannie Mae). This discretion was broad in that it was

subject to no express limitations and was identified as CitiMortgage's "sole and exclusive discretion."

The contract provided that Platinum was to be afforded an opportunity to correct or cure an alleged defect and that, absent correction or cure to CitiMortgage's "complete satisfaction," Platinum could be required to repurchase the loan. Moreover, if CitiMortgage itself was required to repurchase a loan after sale to a third party, CitiMortgage could assert the fact of that third party's demand for repurchase as grounds to demand Platinum, in turn, repurchase that same loan.

The material contract provisions of the original agreement (with emphasis added) are as follows:

11.    CURE OR REPURCHASE

If CMI [CitiMortgage], in its sole and exclusive discretion, determines any Loan purchased pursuant to this Agreement:

(i)    was underwritten and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement or the CMI Manual in effect as of the date CMI purchased such Loan;

(ii)    was underwritten and/or originated based on any materially inaccurate information or material misrepresentation made by the Loan borrower(s), Correspondent, Correspondent's directors, officers, employees, agents, independent contractors and/or affiliates, or any other party providing information relating to said Loan;

(iii)    was or is capable of being rescinded by the applicable borrower(s) pursuant to the provisions of any applicable federal (including but not limited to the Truth-In-Lending Act) or state law or regulation;

(iv)    must be repurchased from any secondary market investor (including but not limited to the Fannie Mae, Freddie Mac, FHA,

-3-

VA, HUD or Government National Mortgage Association) due to a breach by Correspondent of any representation, warranty or covenant contained in this Agreement or the CMI Manual or a failure by Correspondent to comply in all material respects with the applicable CMI Manual terms, conditions, requirements and procedures; and/or

(v)     was subject to an Early Payment Default (as defined in the CMI Manual), an Early Payoff (as defined in the CMI Manual) or any other payment related defect (as defined in the CMI Manual)

Correspondent will, *upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI.* If, after receiving such notice from CMI, Correspondent is unable to correct or cure such defect within the prescribed time, Correspondent shall, at CMI's sole discretion, either (i) repurchase such defective Loan from CMI at the price required by CMI ("Repurchase Price") or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Loan purchase price) as CMI may deem appropriate. If CMI requests a repurchase of a defective Loan, Correspondent shall, within ten (10) business days of Correspondent's receipt of such repurchase request, pay to CMI the Repurchase Price by cashier's check or wire transfer of immediately available federal funds . . . .

Correspondent agrees and acknowledges that the provisions of this Sec. 11 do not, in any way, eliminate, diminish or impair Correspondent's indemnification obligations contained in Sec. 10.

And, in the addendum, the additional provisions for Section 11 state:

Correspondent expressly agrees that it shall underwrite each Loan in conformity with the applicable underwriting criteria of CMI. *If an audit by CMI on any Loan reveals that it was underwritten in violation of the applicable CMI underwriting criteria, Correspondent will, not later than thirty (30) days after receipt of written notice from CMI, repurchase the Loan at the Repurchase Price or provide CMI with written evidence as to why Correspondent believes such underwriting*

*criteria was not violated.  If, after reviewing Correspondent's written evidence, CMI, in its sole and independent discretion, determines the Loan was not originated in accordance with the applicable underwriting criteria, Correspondent will, not later than thirty (30) days after receiving  further written notice from CMI, repurchase the Loan* at the Repurchase Price specified in the Agreement, Manual and/or applicable Bulletin(s).

Here, after Fannie Mae informed CitiMortgage that there were defects in the mortgages, CitiMortgage sent three letters to Platinum for each of the seven loans (twenty-one letters in total).

As to each separate loan, a first letter: (1) identified a "potential breach" and described that breach; (2) invited Platinum to investigate the matter and send a "written response along with any supporting documentation" within "thirty days"; and (3) notified Platinum that if CitiMortgage did not find the resolution satisfactory, repurchase may be required.

As to each loan, after more than the expressly identified thirty days had passed, CitiMortgage sent a second letter describing the breach and stating repurchase was required.  Again, CitiMortgage cited a deadline of thirty days. CitiMortgage's second letter as to each loan expressly stated, "Please contact me upon receipt of this letter to confirm the repurchase date on or before thirty (30) days from the date of this letter."

As to each loan, again after more than the expressly identified thirty days had passed, CitiMortgage sent a third letter.  In the third letter as to each loan, CitiMortgage again described the breach and stated repurchase was required and needed to be confirmed "on or before thirty (30) days from the date of this letter." For several of the loans, CitiMortgage made express reference to having received documentation or explanation from Platinum in response to earlier letters and having

determined such responses were not satisfactory. For other loans, CitiMortgage expressly noted that Platinum had not responded.

More than two years after sending the last letter for the seventh loan, CitiMortgage filed the present suit. Platinum moved for summary judgment, arguing (1) CitiMortgage could not force repurchase because the agreement had been terminated; (2) CitiMortgage could not force repurchase because CitiMortgage had already foreclosed on the underlying mortgage loans; and (3) CitiMortgage failed to satisfy a condition precedent in that CitiMortgage did not prescribe a time for cure or correction.

The district court addressed only the third issue. The district court concluded CitiMortgage did not provide adequate notice because CitiMortgage did not expressly "prescribe" a time for Platinum to correct or cure the alleged defects. In reaching this conclusion, the district court determined that the agreement placed a condition precedent upon Platinum's repurchase duty. According to the district court, the phrase "upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI," meant that unless and until CitiMortgage expressly told Platinum a date by which it must correct or cure a defect, Platinum could not know when the window for cure had closed and, therefore, could not be forced to repurchase a loan.

The district court did not view the letters' repeated and express references to thirty-day response times as satisfying the condition precedent. As to the first set of seven letters, the district court concluded they did not satisfy the notice provisions because each referenced a "possible" breach, indicating CitiMortgage had not yet concluded a defect, in fact, existed. As to this point, the district court also found CitiMortgage had effectively conceded that the first set of letters did not give notice of the alleged defects because, in briefing to the district court, CitiMortgage stated, "It is in the [second set of letters], not the [first set of letters], where [CitiMortgage]

states that it has determined the loan is defective and specifies the defect." CitiMortgage contested any such concession.

Regarding the second set of letters, the district court noted the parties' disagreement as to whether CitiMortgage's failure to use the terms "correct" or "cure" was fatal to CitiMortgage's argument. The district court concluded it need not resolve the issue because the letters failed to expressly prescribe a time for cure or correction.

Finally, the district court held the addendum's reference to a thirty-day response time did not serve as the prescription of a time for cure or correction. The district court, instead, concluded (1) the thirty-day period set forth in the addendum applied to an appeal process rather than to the opportunity to cure, and (2) the thirty-day period referenced in the addendum could only be triggered following a formal audit. In this respect, the district court acknowledged that another district court judge in the same district had reached the opposite conclusion on indistinguishable facts. See Citimortgage, Inc. v. Chicago Bankcorp, Inc., No. 4:14CV01278, 2016 WL 3958594 (E.D. Mo. July 22, 2016). In fact, the district court described the court's analysis in the other case as "conflat[ing]" the procedures in the original agreement and in the addendum. The district court in the current case then concluded, "The Court sees no reason why it should excuse CMI from express compliance with the notice and cure requirements set forth in the Agreement which CMI itself drafted."

CitiMortgage filed a motion to reconsider, arguing that the unexpected rejection of the other district judge's position in the similar case from the same district took CitiMortgage by surprise. With the motion to reconsider, CitiMortgage sought to supplement the record with a large volume of additional materials. Platinum contested the motion and argued CitiMortgage should not be allowed to supplement the record. The district court summarily denied the motion.

## II. Discussion

We review the grant of summary judgment de novo.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  Here, the language of the agreement is undisputed and the letters, as described above and as quoted in the district court's opinion, are in the record.  Missouri law applies, and in Missouri, "[t]he interpretation of a written contract is a matter of law for the court."  Union Elec. Co. v. Sw. Bell Tel. L.P., 378 F.3d 781, 786 (8th Cir. 2004).  Our de novo review of contract interpretation as a matter of law includes the determination of whether a written contract imposes a condition precedent.  Id. at 788.

As an initial matter, we question whether the prescription of a time for Platinum to correct or cure an alleged breach is a condition precedent.  In Missouri, conditions precedent are disfavored.  See James E. Brady & Co. v. Eno, 992 F.2d 864, 869 (8th Cir. 1993) ("Courts should not construe contract provisions to be conditions precedent 'unless required to do so by plain, unambiguous language or by necessary implication.'" (quoting Kansas City S. Ry. v. St. Louis–San Francisco Ry., 509 S.W.2d 457, 460 (Mo. 1974))).  As such, where it is not necessary to interpret a contract provision as establishing a condition precedent, the court should not do so.  See id. at 869–70 (finding a contract provision did not create a condition precedent where "an alternative construction of the repayment language [was] clearly reasonable").  Here, the sophisticated parties undeniably were aware of their rights and obligations.  The right to attempt cure is plain from the face of the agreement, and the notice provisions surrounding that right do not unambiguously set forth the designation of a temporal limitation as a condition precedent to CitiMortgage's right to force repurchase.  Union Elec., 378 F.3d at 788 ("Had the parties wished to require compliance with [a safety code] as a precondition to liability . . . they could have said so.").

Platinum argues the notice provision may only be interpreted as a protection for Platinum strictly constraining CitiMortgage's right to force repurchase. The notice provision, however, contains no language suggesting the right to force repurchase is conditional. The notice provision, of course, indicates a time for attempting cure—after Platinum is made aware of the defect. The contested provision also empowers CitiMortgage to place a limit upon that time. If CitiMortgage elects not to exercise its right by failing to limit that time period, and instead sends multiple letters and delays before instituting suit, CitiMortgage has simply elected not to exercise its own right. In effect, the time aspect of the notice provision appears to define a right for CitiMortgage rather than a condition precedent meant to protect Platinum. As such, even if CitiMortgage had not chosen to include time limits in its many letters, its failure to do so should not be viewed as wholly eliminating Platinum's obligation to repurchase defective loans.

Regardless, we need not decide the issue of whether the contested provision imposes a condition precedent. Even if the prescription of a time for cure were a condition precedent, CitiMortgage's three letters concerning each individual loan sufficed to satisfy CitiMortgage's notice obligations. Each of the three letters for each of the seven loans listed a thirty-day window for action. And, as to each individual loan, the second and third letters did not arrive unannounced and in a vacuum. Therefore, as to each loan, the corresponding three letters must be viewed collectively. Collectively, each set of three letters identified a defect, invited written responses with supporting documentation, and identified a deadline.

Critically, nothing in the original agreement states that the time "prescribed" for cure or correction had to be in writing, much less wholly communicated within one individual writing. In fact, the agreement does not indicate what form CitiMortgage's notice of defect or prescription of time for cure or correction had to take. The agreement also fails to indicate that CitiMortgage must use specific triggering words such as "cure or correct." In short, the form of notice required by

an agreement depends upon the agreement, and the clear and repeated notice provided in this case satisfied the vague requirements of the agreement. See Gray v. Bicknell, 86 F.3d 1472, 1479 (8th Cir. 1996) ("Under Missouri law, the nature of notice required by contract depends upon the provisions of that contract."). The parties in this case are sophisticated and the right to cure is plain on the face of the agreement. Platinum was put on notice of alleged defects, and given repeated thirty-day periods followed by an extensive delay prior to suit that provided more than adequate opportunity to attempt cure. Id. ("[Missouri law] does not require that notice of breach, to be effective, must be the clearest statement possible."); Schaefer v. Rivers, 965 S.W.2d 954, 957 (Mo. Ct. App. 1998) (noting that unless a contract expressly specifies otherwise, "substantial compliance" is sufficient).

The parties present several other arguments, many of which involve vigorous disputes as to whether arguments were timely made below, properly supported, and adequately preserved. For example, CitiMortgage asserts arguments addressing: (1) actual notice; (2) futility; (3) lack of harm; and (4) use of the addendum's thirty-day period as the prescribed period for cure. Given our resolution of the case as set forth above, we need not address these issues.

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.[1]

_____

---

[1]We deny the pending motion to unseal the appellant's addendum. We do not address the grounds for summary judgment raised below and not addressed by the district court, namely, Platinum's arguments that CitiMortgage could not force repurchase because the agreement had been terminated and because CitiMortgage had foreclosed on the properties securing the loans. We leave to the district court in the first instance the resolution of these issues and any related issues concerning the state of the record.

-10-